695 So.2d 195 (1996)
Joseph Tommy WILSON
v.
STATE.
CR-95-0507.
Court of Criminal Appeals of Alabama.
August 23, 1996.
Rehearing Denied January 17, 1997.
Certiorari Denied April 18, 1997.
*196 Paul Meyers II, Dothan, for Appellant.
Jeff Sessions, Atty. Gen., and Lynda K. Oswald, Asst. Atty. Gen., for Appellee.
Alabama Supreme Court 1960713.
COBB, Judge.
The appellant, Joseph Tommy Wilson, was indicted and convicted of robbery in the first degree of the cashier and owner of the Oyster Bar in Dothan. Robbery in the first degree is a Class A felony. He was sentenced as a habitual felony offender with one prior felony conviction to life in the penitentiary. He was also ordered to pay restitution in the amount of $500 and to pay a victims' compensation assessment of $500.
The appellant contends that the prosecution failed to prove the charge of robbery in the first degree because it did not prove beyond a reasonable doubt that Ms. Annemarie Kassler, the owner of and the cashier at the Oyster Bar on the night of the robbery, sustained serious physical injury during the course of the robbery. The appellant was indicted under § 13A-8-41, Ala.Code 1975, which provides that a person commits the crime of robbery in the first degree if, during the course of committing a robbery, he causes serious physical injury to another person. "`Serious physical injury' is `[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.' Ala.Code 1975, § 13A-1-2(9)." Davis v. State, 467 So.2d 265, 266 (Ala.Cr.App.1985)
The following evidence was presented at trial concerning the victim's injuries. The victim testified that the appellant first hit her in the face presumably with his fist, although she is not sure that it was his fist. He then pushed her onto the concrete floor and hit her on the face and head with his fists. According to the victim, the appellant put his knee on her chest and "pounded away." R. 76. She testified that the appellant "hit [her] hard enough until he was bouncing [her] head between the [soft drink] box and off the concrete [floor until] part of the skin was missing on this side of the head [and she] had two huge goose eggs on the back of [her] head." R. 77. Her face and head were bleeding. She testified that the appellant continued to hit her until she closed her eyes and held her breath. The victim stated that after the appellant left she counted to five and then got up and telephoned 911, requesting medical attention. She looked out the window, searching for the appellant. When she saw him across the street, she described his vehicle to the 911 operator. An ambulance and the police arrived. The ambulance crew strapped her to a wooden board and immobilized her neck. She was taken by ambulance to the hospital emergency room. At the emergency room she complained of pains in her chest, so a cardiogram was ordered, but nothing irregular was detected by the cardiogram. A CAT scan was ordered because of concern for head injuries. The CAT scan revealed a hairline fracture on one of her sinus cavities, which the doctors allowed to heal on its own. She was taken to surgery and the wound above her left eye was stitched by a plastic surgeon. She was released from the hospital the next day. She took pain medicine for "quite some time" and also took antibiotics. R. 96. She testified that the scar above her eye "looked bad" for a while but had healed over time. Presumably the scar was still visible to some degree.
Doctor David Wayne Williams treated the victim in the emergency room. He testified that the victim was brought into the emergency room by ambulance personnel and that they had taken precautions to protect her in case she had suffered spinal and other injuries. Upon arrival the victim was treated as a trauma victim. The victim had bruises about her face and a cut on her face. The *197 victim informed Dr. Williams that her head had been struck against a hard surface of some kind. Nurses determined that the victim's vital signs were stable. Laboratory work was done and determined to be satisfactory. X-rays were done and reviewed. A CAT scan was done to look for brain injury. No brain injury was discovered; however, underneath a laceration to her left cheek, there was a broken facial bone. (Apparently this is the sinus fracture referred to by the victim.). The laceration reached to the bone.[1] However, according to Dr. Williams, the victim suffered from no life-threatening injuries. R. 122. A plastic surgeon was consulted and repaired the laceration on her cheek.[2] Dr. Williams was asked if "taking a person's head and slamming it or hitting it into concrete or into a hard, metal object, such as a drink cooler, pose[d] a risk that the person could be seriously injured" and whether "it pose[d] a substantial risk of death in certain cases?" Dr. Williams stated that, "it is conceivable that a potentially fatal injury might occur." R. 119-20. He also stated that the scar left by the laceration would hopefully be less visible over time, but he also stated that "despite how carefully the repair is done, there will probably always be some element of scar." R. 120.
Despite the despicable nature of the crime, we must conclude, upon reviewing the facts set out above, and upon reviewing the legal precedent, that the victim did not sustain "serious physical injury." In Davis v. State, 467 So.2d 265, (Ala.Cr.App.1985), the victim was shot in the left hand and right arm with a pistol. The victim was treated and released from the hospital the same day and returned only to have bandages removed. The victim had no further problems, although the bullet in her arm was not removed. The victim testified that she bled, that she felt pain, and that she was scared. In addition, she showed her scars from her wounds to the jury. This court found that the victim in Davis did not sustain any "serious physical injury." In making this determination this court set out representative cases with facts supporting a jury's finding "serious physical injury" and those which constituted a "physical injury":
"In Lawson v. State, 455 So.2d 99 (Ala.Cr. App.1984), the second-degree assault victim was rendered unconscious with very low blood pressure from a puncture wound in the upper left portion of his chest, which, if left unattended, would have resulted in his death. As a result of this assault, the victim was hospitalized for two weeks. [This was found to be a serious physical injury]. The court in Moore v. State, 447 So.2d 1321 (Ala.Cr.App.1984), determined that a stab wound within one inch of the victim's heart, which necessitated three weeks of hospitalization in intensive care was `serious physical injury.' Likewise, in Thomas v. State, 418 So.2d 964 (Ala.Cr.App.1982), the court concluded that the prosecution established that the first-degree assault victim received `serious physical injury' from two close range shots from a .32-caliber pistol. The court specifically noted that the evidence established that six wounds caused by the two bullets caused `serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of [a] bodily organ.' Id. at 965. The evidence was that, although the wounds were superficial, the victim remained in the hospital for two days, was ordered to remain in bed at home for two weeks, and still had recurring pain as a result of the wounds.
467 So.2d 265, 266-67 (Ala.Cr.App.1985); James v. State, 654 So.2d 59, 60 (Ala.Crim. App.1994) (The case correctly was sent to the jury for it to determine whether the victim suffered "serious physical injury" resulting from the blows inflicted by the appellant where "[t]he witnesses stated that the victim lay unconscious in a pool of blood after the appellant hit her with the bat. The record also showed that the injury to her head *198 required stitches and that the victim stayed in the hospital for four or five days. The victim also testified that she suffered from headaches, could not walk for about a week after the injury, and was unable to return to work for several months").
The following illustrates those factual circumstances under which this court has held there was no proof of "serious physical injury."
"Injuries sustained by beating the assault victim about the head with fists and the butt of a .25-caliber pistol were deemed to fall outside the statutory definition of `serious physical injury,' by this court in Nelson v. State, 462 So.2d 962 (Ala.Cr.App. 1984), where the victim did not see a doctor until the following morning and the injuries required no stitches. In Alvis v. State, 434 So.2d 859 (Ala.Cr.App.1983), this court reversed the appellant's conviction and held that injuries resulting from a beating to the victim's head and chest did not constitute `serious physical injury,' even though the victim had difficulty breathing, his rib cage was sore, and he coughed up blood. The court noted that the victim `suffered no broken bones, heart damage or other disfiguring injury and was in the hospital two and one-half days merely for observation....' Id. at 862. See also Caine v. State, 453 So.2d 1081 (Ala.Cr.App.1984) (wherein the court determined that proof of `serious physical injury' was not sustained by evidence that cuts in the robbery victim's mouth prohibited the victim from wearing his dentures or eating solid food for several days).
Davis v. State, 467 So.2d at 267; Harris v. State, 398 So.2d 777, 778-79 (Ala.Cr.App. 1981) ("Brown, armed with a club, robbed the attendant at the Racetrac Service Station ... and ... as Brown and the defendant were making their escape, Brown clubbed the attendant on the back of his head causing an injury which required twelve stitches. There is no contention or proof that this amounted to a `serious physical injury' as defined by Section 13A-1-2(9).").[3]
"`In reviewing the sufficiency of the evidence, this court must review the evidence in the light most favorable to the prosecution. The standard of review is whether legal evidence was presented to the jury from which the jury could by fair inference find the defendant guilty beyond a reasonable doubt.' Powell v. State, 576 So.2d 1285, 1288 (Ala.Cr.App.1991) (citations omitted). Accord Johnson v. State, 555 So.2d 818, 819 (Ala.Cr.App.1989)."
Hale v. State, 654 So.2d 83, 85 (Ala.Cr.App. 1994).
We must reverse the appellant's conviction for robbery in the first degree because the State failed to prove that the injuries suffered by the appellant created a substantial risk that she might die, or caused serious and protracted disfigurement, protracted impairment *199 of health or protracted loss or impairment of the function of any bodily organ. While we condemn the appellant's behavior, we cannot affirm his conviction for robbery in the first degree in light of the precedent set in the many cases cited above.
A reversal of the appellant's conviction of robbery in the first degree is mandated. However, the State's evidence does support a conviction for robbery in the third degree pursuant to § 13A-8-43(1), Ala.Code 1975, because the evidence sustained a finding that the appellant used force against the victim with intent to overcome her physical resistance or physical power of resistance. First degree robbery requires proof of all the elements necessary for third degree robbery plus the additional element of causing physical injury to the victim during the course of the robbery. Ex parte McCall, 594 So.2d 628 (Ala.1991).
Therefore, it is the judgment of this court that the appellant's conviction for first-degree robbery be reversed and set aside. However, it is the further opinion of this court that the appellant is guilty of third degree robbery. Hence, this cause is remanded with directions that the first-degree robbery conviction be set aside and that the appellant be properly adjudged guilty of, and sentenced for the offense of, third-degree robbery.
REVERSED AND JUDGMENT RENDERED; REMANDED FOR SENTENCING.
TAYLOR, P.J., and PATTERSON, J., concur.
LONG, J., dissents with opinion in which McMILLAN, J., joins.
LONG, Judge (dissenting).
Because I believe that the evidence was sufficient to show that the victim sustained "serious physical injury," I must respectfully dissent.
NOTES
[1] The victim stated and the record reflects that the only laceration requiring stitches, and the only laceration attended by a plastic surgeon, was a laceration over the victim's eye. Therefore, we assume that Dr. Williams mistakenly stated that the laceration to the bone, which was treated by a plastic surgeon, was on the victim's left cheek.
[2] See footnote number 1.
[3] See Anderson v. State, 686 So.2d 378 (Ala.Cr. App.1994), reversed, 686 So.2d 381 (Ala.1996) because the jury could have found victim's deep knife wound to be "serious physical injury." However, see the following cases cited in Anderson v. State, where the appellate court determined that the described injuries were not "serious physical injuries": "Ex parte Vaughn, 495 So.2d 83, 84 (Ala.1986) (when accused cut victim with butcher knife in chest area and on hand there was no serious physical injury); M.T.R. v. State, 620 So.2d 753, 754-55 (Ala.Cr. App.1993) (after gunshot wound to shoulder, victim was treated and released from hospital same day; no serious physical injury); Vo v. State, 612 So.2d 1323, 1325-26 (Ala.Cr.App.1992) (gunshot wound to arm did not constitute serious physical injury); Cowan v. State, 540 So.2d 99, 100-01 (Ala.Cr.App.1988) (victim who was hospitalized overnight after gunshot wound to chest had no serious physical injury); Collins v. State, 508 So.2d 295, 300 (Ala.Cr.App.1987) (victim whose head was grazed by bullet and who received tetanus shot did not suffer serious physical injury); Davis v. State, 467 So.2d 265, 266 (Ala.Cr. App.1985) (when victim was shot through right arm and left hand, and was treated and released same day, there was no serious physical injury); Goans v. State, 465 So.2d 482 (Ala.Cr.App.1985) (victim who suffered gunshot wound to collarbone and who was treated and released same night had no serious physical injury); Nelson v. State, 462 So.2d 962, 963 (Ala.Cr.App.1984) (victim who bled `like a stuck pig' after being beaten with fists and hit on forehead with butt of gun did not have serious physical injury); Alvis v. State, 434 So.2d 859, 862 (Ala.Cr.App.1983) (beating to head and chest did not result in serious physical injury even though victim had sore rib cage, coughed up blood, and remained in hospital two and one-half days for observation)."