The appellant, John Steven Marlowe, alias Steven Peavy, was convicted of *Page 1184 
robbery in the first degree, a violation of § 13A-8-41, Ala. Code 1975. Marlowe was sentenced to life imprisonment in the penitentiary and was ordered to pay $50 to the Crime Victim's Compensation Fund and $5,287 in court costs. On May 30, 2001, Marlowe filed a motion for judgment of acquittal or, in the alternative, for a new trial, which the trial court denied. This appeal followed.
The evidence elicited at trial tended to establish the following. Around 3:00 p.m. on November 3, 2000, 75-year-old Nelvin Stacey arrived at his office at Colony Trailer Park. Stacey was the owner of the park. While collecting rent and making repairs, he saw a red automobile driving around the park. Later that day — around 6:00 p.m. — Stacey returned to his office. When he entered the office, he was struck in the head and chest, and he lost consciousness. As Stacey regained consciousness, he became aware that a masked man was attempting to take his wallet. Stacey struggled with the man — first inside, and then outside the office. Stacey again lost consciousness, and the man fled with several hundred dollars from Stacey's wallet. Two residents of the trailer park noticed the struggle, and attempted to come to Stacey's aid. As they approached, they saw the robber flee into a nearby wooded area before they arrived. One of the residents telephoned for an ambulance for Stacey. About that time, the two residents observed an older red sports car being driven from the woods. Stacey was treated at the hospital for a laceration to the head, and he remained in the hospital under observation for three days.
The Monroe County Sheriff's Department received an anonymous tip that John Steven Marlowe had committed the crime. Marlowe was brought in for questioning; he denied any knowledge of the crime, and he indicated that he was willing to take a lie-detector test. Two weeks later, Marlowe voluntarily took a polygraph test; at the conclusion of the polygraph test, he gave a statement confessing to the crime.
At trial, Marlowe moved to suppress the confession, and following a hearing the trial judge denied his motion. Marlowe was convicted; this appeal follows.
 I.
On appeal, Marlowe argues that the trial court erroneously denied his motion to suppress his confession. Specifically, Marlowe contends that the trial court should have granted his motion to suppress because the police, according to Marlowe, had promised him leniency and had implied that the results of the polygraph test would be used as evidence against him in trial. We disagree.
 "`The standard of review when there is conflicting evidence at a hearing on a motion to suppress evidence of a confession is whether the trial court's decision was "manifestly contrary to the great weight of the evidence." Ex parte Matthews, 601 So.2d 52, 54-55
(Ala.), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992). We will not disturb the trial court's decision on the voluntariness of a confession unless it is clearly erroneous. Ex parte Youngblood, 656 So.2d 390, 392 (Ala. 1995).'"
Richardson v. State, 819 So.2d 91, 98 (Ala.Crim.App. 2001) (quotingBarnes v. State, 704 So.2d 487, 492 (Ala.Crim.App. 1997)).
During the trial, the trial judge conducted a hearing on Marlowe's motion to suppress. At the hearing, Officer Terry Mason testified that he developed Marlowe as a suspect based on information he was given by witnesses and by an anonymous informant. Following a traffic stop, Marlowe was brought in for questioning; he denied any involvement in the crime; and he was released. Two weeks later, *Page 1185 
Marlowe voluntarily took a polygraph test administered by Agent Tommy Merritt of the Alabama Bureau of Investigation. Officer Mason re-interviewed Marlowe following the polygraph test. Officer Mason testified that he did not attempt to induce Marlowe to confess.
"[Prosecutor]: Did you promise him anything?
"[Officer Mason]: No, sir.
 "[Prosecutor]: Did you offer a particular sentence he could receive if he gave a statement?
"[Officer Mason]: No, sir.
 "[Prosecutor]: Did you tell him that he could get out on a certain bond if he gave you a statement?
"[Officer Mason]: No, sir.
 "[Prosecutor]: Did you give him any inducement in any way to get him to give you a statement?
"[Officer Mason]: No, sir.
"[Prosecutor]: Any threat, any physical threat at all?
"[Officer Mason]: No, sir.
"[Prosecutor]: Did you apply any violence to him?
"[Officer Mason]: No, sir.
"[Prosecutor]: Did you threaten any violence?
"[Officer Mason]: No, sir.
 "[Prosecutor]: Did you tell him that [it] would [be] better off for him to make a statement?
"[Officer Mason]: No, sir."
(R. 93-94.)
Officer Mason testified that he told Marlowe what the results of the polygraph test were and that he told Marlowe that the results were not admissible as evidence in court.
Officer Mason testified that he advised Marlowe of the rights he was waiving by signing the waiver-of-rights form, and that Marlowe signed the waiver and indicated that he understood those rights and that he understood that he was waiving them. Marlowe then gave the following statement, which Officer Mason wrote on the back of the waiver-of-rights form.
 "On November 3rd around 4:30 p.m., I went to Colony Trailer Park in my Chrysler Laser [automobile], burgundy in color, and parked on the trail by the mailboxes, across from the office. I parked where I could come out forward. I had a pair of [camouflage] pants, gray hooded sweatshirt pulled over my head, boots black and gloves, batting. I walked in his office and sat in a chair by the door. The door was open and it was dark. I sat there thirty minutes before he, Mr. Stacey, came in. I had worked with him before and knew that he would come to the office. He drove up in his truck and got out. He walked up to the door. I hit him in the chest. He grabbed me and I grabbed him back. We fell by the door. I fell on top of him. I grabbed the billfold out of his pants pocket and as he was on the floor, I turned and walked away. He grabbed my shirt and I stepped off the steps backward, as I had a hold of him and we fell to the bottom of the steps. I rolled him over and I got up. Money fell out of the wallet. I picked it up off the ground and I left. I got in my car and went straight to the house. I got around $200.00 cash. I left and went to Fort Deposit, like I said the first time. I burned what I had the next day in Old Salem. I'm not going to show you. I give this statement of my own free will and no promises or threats have been made to me, no pressure or coercion had been used against me." *Page 1186 
(R. 100-01.)[1]
Marlowe testified at the suppression hearing that he was given the impression that the polygraph test results were admissible in court and that they would be used against him. He further testified that Officer Mason indicated that if he confessed, he might get a lighter sentence.
The trial court's ruling on a motion to suppress a confession is given great deference on appeal and will not be overturned unless that ruling is palpably contrary to the weight of the evidence. See, e.g., Taylor v.State, 808 So.2d 1148 (Ala.Crim.App. 2000); D.M.M. v. State, 647 So.2d 57
(Ala.Crim.App. 1994). Based on our review of the record, we cannot say that the trial court's denial of the motion to suppress was "manifestly contrary to the great weight of the evidence." Richardson v. State,819 So.2d at 98. The trial judge did not err in denying Marlowe's motion to suppress.
 II.
Marlowe argues in his brief to this Court that the trial court erroneously denied his motion for a judgment of acquittal and his motion for a new trial. At the conclusion of the State's case-in-chief, Marlowe made the following motion for a judgment of acquittal: "Your Honor, at this time I would like to make a Motion for Judgment of Acquittal." (R. 138.) At the close of the State's case, Marlowe also submitted a written motion for a judgment of acquittal. That motion specifically alleged: "The State has failed to prove that this Defendant caused `serious physical injury' to Nelvin Stacey as charged in the indictment." (C. 17.)[2] Marlowe, in his motion for a new trial, argued, in relevant part, that the State had failed to prove a prima facie case of first-degree robbery, and he specifically stated that the prosecution had failed to prove that Stacey suffered serious physical injury.
The Alabama Supreme Court addressed the appellate court's role in reviewing the sufficiency of the evidence in criminal cases in Ex parteWoodall, 730 So.2d 652 (Ala. 1998):
 "`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485
(Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985).' Powe v. State, 597 So.2d 721, 724 (Ala. 1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App. 1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054
(Ala.Cr.App. 1992). Thus, '[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence *Page 1187 
is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978) (emphasis original)."
730 So.2d at 658.
Section 13A-8-41(a)(2), Ala. Code 1975, provides: "A person commits the crime of robbery in the first degree if he violates Section 13A-8-43
and he: . . . Causes serious physical injury to another." Section13A-8-43 defines third-degree robbery. A person commits third-degree robbery in violation of § 13A-8-43, Ala. Code 1975, if he uses force or threatens the imminent use of force in the course of committing a theft.
"Serious physical injury" is defined as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." § 13A-1-2(9), Ala. Code 1975. In determining whether serious physical injury has occurred, "neither the jury nor this Court [are] required to ignore `common sense, common reason, and common observation.' Thompson v.State, 21 Ala. App. 498, 499, 109 So. 557 (1926)." Hale v. State,654 So.2d 83, 86 (Ala.Crim.App. 1994).
The evidence at trial revealed that Marlowe struck the 75-year-old victim in the head and robbed him of the contents of his wallet. The blow to Stacey's head rendered him unconscious; he also suffered a laceration to the head requiring closure with metal staples. Two witnesses testified that they saw blood flowing from an open wound on Stacey's head. Dr. David Keddy, the emergency-room physician who treated Stacey, testified that he suffered from an eight centimeter laceration to the head. The victim was given a CAT scan, and the results showed that the brain was within "normal and acceptable limits." (R. 43.) The wound was closed with metal staples; Stacey was hospitalized and remained under observation for three days following the incident.
Dr. Keddy testified that this type of injury could cause serious harm or death, but that he did not consider Stacey's injuries to be life threatening. Dr. Keddy testified that although he did not think the injuries created a substantial risk of death, it would have been possible for Stacey to have died if he had not received medical treatment, and that the injuries caused a serious and permanent disfigurement of Stacey's head, but that he could not say whether they would cause him protracted or long-term health problems. Indeed, Dr. Keddy stated that he would have to refer questions of long-term impairment to Dr. Stallworth, the doctor who treated and observed Stacey following his removal from the emergency room into a regular hospital room. Dr. Stallworth did not testify at trial.
At trial, Stacey testified that his assailant struck him in the head with some sort of hard object, causing him to lose consciousness two or three times during the attack. Some five months after the attack, Stacey testified that he still suffered from headaches, sharp pain, dizziness, blurred vision, and some memory loss as a result of the blow to his head. He also stated that he suffered some back problems from the fall. Additionally, Stacey testified that he did not return to his office for over a month following the attack. Stacey testified that he was knocked unconscious two or three times during the attack, and that he was struck with some sort of hard object.
Given Stacey's age, together with his testimony of his continued medical problems, the evidence was sufficient to create *Page 1188 
a jury question as to whether Stacey suffered "serious physical injury" as defined in § 13A-1-2(9). Indeed, this Court has held similar evidence to be sufficient to create a jury question as to whether the victim had suffered "serious physical injury" as defined by statute. InSizemore v. State, 686 So.2d 544 (Ala.Crim.App. 1996), this Court rejected a trial court's finding that an injury had to be "life-threatening" before it would constitute "serious physical injury." We stated:
 "The [trial] court erroneously found that the facts of the case did not establish `serious physical injury' because there was no evidence that the injury was life-threatening. The record reflects that the victim was injured as a result of an automobile collision with the appellant's car. As a result of the accident the victim had underwent surgery on her knee and wore a brace on that knee for two years. The victim testified that after the accident she cannot walk for as long as she could before the accident. This testimony was sufficient to show that the victim suffered `serious physical injury' as defined in the statute defining the offense of assault in the first degree."
686 So.2d at 545-46. Likewise, in James v. State, 654 So.2d 59, 60
(Ala.Crim.App. 1994), this Court held that the State had established that the victim suffered "serious physical injury" by the victim's testimony that the defendant hit her with a baseball bat, that she was rendered unconscious, that she required stitches and spent several days in the hospital, that she still suffered from headaches some months after the attack, that she could not walk for about a week, and that she could not return to work for several months. See also Glass v. State, 671 So.2d 114,120 (Ala.Crim.App. 1995), overruled in part on other grounds, Ex parteGentry, 689 So.2d 916 (Ala. 1996) (that victim sustained "serious physical injury" was established by evidence that victim continued to suffer from severe headaches more than a year after the assault, that victim developed additional medical problems as a result of the attack, that the victim's injuries caused her to experience pain when chewing, and that victim would continue to suffer from these conditions for the remainder of her life). Although those cases involved the offense of first-degree assault rather than first-degree robbery, the same definition of "serious physical injury" is applicable in this case as in those cases.
This Court's duty is to determine whether there was legally sufficient evidence to support the conviction. Based on Sizemore, James, and Glass, we conclude that the State presented sufficient evidence indicating that the victim suffered "serious physical injury" to present a question for the jury's determination. We acknowledge that our decision in this case may appear to signal a shift away from the seemingly more stringent definition of "serious physical injury" this Court applied in Wilson v.State, 695 So.2d 195 (Ala.Crim.App. 1997), Saylor v. State, 719 So. 266
(Ala.Crim.App. 1998), and other cases. Without addressing whether today's decision signals such a shift, we merely note that, based on the particular facts of this case, to hold that Marlowe's attack on the victim did not result in "serious physical injury" would require this Court "to ignore `common sense, common reason, and common observation.'" Hale v.State, supra, 654 So.2d at 86 (quoting Thompson v. State, 21 Ala. App. 498,499, 109 So. 557, 558 (1926)). The jury weighed the evidence and found Marlowe guilty of first-degree robbery. It is not this Court's responsibility to reweigh the evidence. The trial court correctly denied Marlowe's motion for a judgment of acquittal and his motion for a new trial. *Page 1189 
 III.
Marlowe also argues that the trial court's jury instruction covering first-degree robbery was incorrect. Specifically, he contends that such an instruction was improper because the evidence presented at trial did not establish "serious physical injury" to the victim. As we have previously determined, the evidence presented at trial was sufficient to establish a prima facie case of first-degree robbery, including the element of "serious physical injury." Therefore, an instruction on first-degree robbery was warranted.
We further note, however, that Marlowe failed to preserve this claim for appellate review. Marlowe's only objection to the trial court's jury instruction was that the judge had not given "jury charge number 7 to be included, which states or restates the definition of serious physical injury to a person." (R. 156.) The court advised Marlowe that the definition had been covered in the oral charge. Marlowe's objection fails to comply with the standard set forth in Rule 21.3, Ala.R.Crim.P. Because Marlowe did not object to the inclusion of the jury charge for first-degree robbery, this claim was not preserved for our review. SeeMcCart v. State, 765 So.2d 21, 30 (Ala.Crim.App. 1999); Davis v. State,747 So.2d 921, 924 (Ala.Crim.App. 1999).
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, Shaw, and Wise, JJ., concur.
[1] A copy of the written statement was included in the record on appeal. (C. 111.) The written version substantially matches Officer Mason's testimony, with punctuation comprising the primary changes.
[2] Marlowe's motion also alleged that the State had failed to prove each element of first-degree robbery. Because we specifically find that the confession was properly admitted, we need not address those elements Marlowe admitted to in the statement. Thus, we focus our review, as Marlowe does on appeal, on whether the State made a prima facie showing that Stacey suffered serious physical injury.