42 So.3d 138 (2008)
A.L.L.
v.
STATE of Alabama.
CR-06-1500.
Court of Criminal Appeals of Alabama.
September 26, 2008.
Rehearing Denied December 19, 2008.
*139 James Allen Jacobs, Ariton, for appellant.
Troy King, atty. gen., and John M. Porter, asst. atty. gen., for appellee.
PER CURIAM.
A.L.L. was indicted for vehicular homicide, a violation of § 32-5A-192, Ala.Code 1975, and for assault in the second degree, a violation of § 13A-6-21, Ala.Code 1975, as the result of a single-vehicle automobile collision in which Montez Kelly was killed and Michael Grace was injured. A.L.L. applied for and was granted youthful-offender status. Following a bench trial, the circuit court adjudicated A.L.L. a youthful offender based on the underlying charges of vehicular homicide and second-degree assault. The court sentenced A.L.L. to concurrent three-year terms in the community-corrections program, and ordered him to serve six consecutive weekends in jail and to perform community service.
Lillian Watson testified that on the afternoon of August 4, 2005, she was traveling on a two-lane road when she saw the vehicle A.L.L. was driving approach her at a high rate of speed. When the two cars passed one another, A.L.L.'s vehicle went off the edge of the road and began fishtailing. Although Watson did not see the collision in her rearview mirror, she was aware that A.L.L.'s vehicle had crashed into a tree, so she returned to the scene of the wreck and telephoned emergency 911.
James Lee testified that he witnessed the collision from his residence, which was near the road on which A.L.L.'s vehicle had been traveling. He said that he first heard "like a roar and like gravel" and then heard the "squeal" of the car's tires. (R. 22.) Lee stated that when he first saw the car, the front tire had left the pavement and was on the grass, and the car was beginning to slide. Although the posted speed limit on the road was 55 miles per hour, Lee estimated that the car was traveling at least 70 miles per. Lee continued to watch the car as it slid sideways, spun around on the pavement, then slid onto the opposite side of the road; the passenger side of the car struck a tree. According to Lee, the car wrapped itself around the tree as a result of the impact.
Lee testified that he ran to the crash site immediately, and that he observed that the backseat passenger, later identified as Montez Kelly, appeared limp and lifeless. A.L.L. was holding Kelly's head and was calling his name. Another man, later identified as Michael Grace, was lying facedown on the ground in front of the car. Lee said that Grace was "badly cut" (R. 30), with "a lot of cuts [and] abrasions on his arms and head and stuff" (R. 31), and that he was bleeding, but that he nonetheless was trying to get up. Lee told Grace to stay still until help arrived. Lee's girlfriend, Sheila Gassett, also came to the scene. She said that when she first arrived, Grace was incoherent and appeared to be going into shock, but that after she began talking to him, he spoke to her. Grace was bleeding from his shoulder *140 and his leg, Gassett said, but she had no knowledge of whether he was bleeding internally. Gassett accompanied Grace in the ambulance to the Dale Medical Center. Gassett testified that she believed that Grace was later transferred from that facility to the Southeast Medical Center.
Earl Bankston, the Dale County coroner, pronounced Montez Kelly dead at the scene of the crash. Kelly died of multiple blunt-force injuries to his head, which he sustained when the vehicle struck the tree and his head impacted the doorpost that separated the front and backseats of the vehicle A.L.L. was driving.
State Trooper David McGowan, a traffic homicide investigator, testified that he and two additional troopers investigated the wreck. They conducted their investigation several days after the crash. From his measurements and calculations at the scene, Trooper McGowan determined that the vehicle was traveling 81 miles per hour when it initially left the roadway, and that it traveled 585 feet as it slid down the road, crossed both lanes of traffic, and struck the tree. Trooper McGowan calculated that the vehicle was traveling at a speed of at least 45 miles per hour when it struck the tree. The impact with the tree was so severe that remnants of the vehicle were found on the opposite side of the tree from the point of impact. Trooper McGowan testified that Grace, the surviving passenger, had been in the front passenger seat and that he had been ejected as a result of the force of the impact with the tree.

I.
A.L.L. first contends that the trial court erred when it denied his motion to dismiss count one of the indictment, charging him with vehicular homicide under § 32-5A-192, Ala.Code 1975, because, he says, that count failed to allege a culpable mental state and, thus, as to that count the indictment was fatally flawed.
Initially, we note that the State argues that this issue was not preserved for review because A.L.L. did not raise it before trial but raised it for the first time after the State's first witness had been called to the stand and sworn. Although Rule 15.2(a), Ala.R.Crim.P., provides that "[o]bjections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion as provided in Rule 15.3,"[1] Rule 15.2(d), Ala. R.Crim.P., provides that "[t]he lack of subject matter jurisdiction or the failure of the charge to state an offense may be raised by the court or by motion of the defendant at any time during the pendency of the proceeding." (Emphasis added.) "`"An indictment that fails to allege each material element of an offense fails to charge that offense."'" Ex parte Lewis, 811 So.2d 485, 488 (Ala.2001), overruled on other grounds, Ex parte Seymour, 946 So.2d 536 (Ala.2006), quoting Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App.1982), quoting in turn, United States v. London, 550 F.2d 206, 211 (5th Cir.1977). Although A.L.L.'s claim does not implicate the subject-matter jurisdiction of the trial court, see Ex parte Seymour, supra, it is a challenge to the indictment's alleged failure to charge an offense. Therefore, it did not have to be raised before trial under Rule 15.2(a), but could be raised at any time "during the pendency of the proceeding" under Rule 15.2(d). "Pendency of the proceeding" as that phrase is used in Rule 15.2(d) refers to the proceeding in the trial *141 court. See, e.g., Ex parte Harper, 594 So.2d 1181 (Ala.1991). Because A.L.L. raised his claim during the proceeding in the trial court, it was properly preserved for review.
Count I of the indictment alleged:
"ON OR ABOUT AUGUST 4, 2005, ONE [A.L.L.], DID UNLAWFULLY AND UNINTENTIONALLY CAUSE THE DEATH OF ANOTHER PERSON WHILE ENGAGED IN THE VIOLATION OF ANY STATE LAW OR MUNICIPAL ORDINANCE APPLYING TO THE OPERATION OR USE OF A VEHICLE, TO-WIT: SPEEDING, AND SAID VIOLATION IS THE PROXIMATE CAUSE OF DEATH, IN VIOLATION OF SECTION 32-5A-192 OF THE CODE OF ALABAMA."
(C. 12; capitalization in original.)
Section 32-5A-192(a), Ala.Code 1975, provides:
"(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death."
Although § 32-5A-192 does not include a mens rea element, in Ex parte Edwards, 816 So.2d 98 (Ala.2001), the Alabama Supreme Court held that vehicular homicide was not a strict-liability crime, but required a mens rea other than intentionally, specifically, either knowingly, recklessly, or negligently under § 13A-2-2(2), (3), or (4), Ala.Code 1975, respectively. The Court also noted that an indictment charging vehicular homicide should include a mens rea element.
In Chatman v. State, 813 So.2d 956 (Ala. Crim.App.2001), this Court followed Ex parte Edwards and reversed Chapman's guilty-plea conviction for vehicular homicide on the ground that the indictment was defective for not charging a culpable mental state; we explained:
"In Ex parte Edwards, 816 So.2d 98 (Ala.2001), the Alabama Supreme Court reversed our judgment and rendered a judgment for Edwards because the indictment was fatally defective with respect to the charge of vehicular homicide. In Edwards, the Court stated that '[a]n indictment under § 32-5A-192(b) [, Ala.Code 1975,] should charge an appropriate mental state based on § 13A-2-2(2) to (4).' Moreover, because the appellant was acquitted on the manslaughter and the criminal-negligence charges, [s]he was effectively acquitted of vehicular homicide, and, therefore, the trial court erred in denying her motion for a judgment of acquittal. See Ex parte Rice, 766 So.2d 143, 147 (Ala.1999).
"In Ex parte Burnett, 807 So.2d 586 (Ala.2001), the Alabama Supreme Court addressed issues identical to those raised in Edwards, but reversed our judgment and remanded the case for further proceedings consistent with that opinion on grounds that the jury in Burnett did not make any findings as to any charged offense other than vehicular homicide. Because the Supreme Court, in Burnett, did not render a judgment in favor of the appellant, as it did in Ex parte Edwards, this Court, on remand from the Alabama Supreme Court, held that the State can reindict the appellant for vehicular homicide using the language set forth in Ex parte Edwards, supra. See Burnett v. State, 807 So.2d 588 (Ala.Crim.App.2001).
"As in Ex parte Edwards and Ex parte Burnett, the indictment in the instant case did not charge a mental state, *142 and is, therefore, fatally defective with respect to the vehicular-homicide charge.... Because there has been no adjudication in this case regarding the sufficiency of the evidence to support the appellant's vehicular-homicide charge, the State can, however, reindict the appellant for vehicular homicide using the language set forth in Ex parte Edwards, supra."
813 So.2d at 957-58 (emphasis added).
We recognize that this Court has, in some circumstances, upheld indictments that did not charge a mens rea element, finding in those cases that the indictments sufficiently apprised the defendants of the nature of the charges against them. See Sullens v. State, 878 So.2d 1216 (Ala.Crim. App.2003), and the cases cited therein. However, none of those cases dealt with the vehicular-homicide statute, and this Court did not overrule Chatman in those opinions. Therefore, Chatman is controlling in this case.
Based on our holding in Chatman, we are compelled to reverse A.L.L.'s adjudication as a youthful offender based on the underlying charge of vehicular homicide. However, as in Chatman, the State can reindict A.L.L. for vehicular homicide "using the language set forth in Ex parte Edwards, supra." Chatman, 813 So.2d at 958.

II.
A.L.L. also contends that the trial court erred when it denied his motion for a judgment of acquittal, made at the close of the State's case and again at the close of all of the evidence, as to the charge of assault in the second degree. Specifically, A.L.L. argues that the State failed to prove that Michael Grace, the surviving passenger who was ejected from the vehicle, suffered a "serious physical injury" as required by § 13A-6-21(a)(3), Ala.Code 1975.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
The indictment charged A.L.L. with recklessly causing serious physical injury to Grace by means of a deadly weapon or a dangerous instrument, i.e., a vehicle, in violation of § 13A-6-21(a)(3), Ala.Code 1975. Section 13A-6-21(a)(3)[2] provides *143 that "[a] person commits the crime of assault in the second degree if the person... recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument." Section 13A-1-2(14), Ala.Code 1975, defines serious physical injury as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ."
For years Alabama's appellate courts applied a stringent definition of "serious physical injury," and proof of serious physical injury required extensive evidence. For example, in Saylor v. State, 719 So.2d 266 (Ala.Crim.App.1998), Saylor cut the victim, Angela Smith, on the neck twice and hit her twice, and he was convicted of assault in the first degree. This Court held that Smith's testimony that the knife wounds "missed [her] main artery by barely a hair" and that she "still [had] problems from where [she] did get stabbed" was not sufficient to establish that Smith suffered from "`serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.'" 719 So.2d at 268. This Court also held that the evidence, which included hospital records, was insufficient to establish that the knife wounds created a substantial risk of death because the records indicated that Smith suffered no internal bleeding or damage and that Smith was discharged in satisfactory condition one day after she was admitted. This Court reversed Saylor's conviction for first-degree assault and remanded the cause for the trial court to adjudicate Saylor guilty of second-degree assault for intentionally causing physical injury, a charge which, this Court held, was supported by the evidence and on which the jury had been instructed. See also Wilson v. State, 695 So.2d 195 (Ala. Crim.App.1996), discussing numerous cases in which evidence was held not to establish serious physical injury.
However, in Ex parte Marlowe, 854 So.2d 1189 (Ala.2003), the Alabama Supreme Court shifted away from that stringent definition, following this Court's reasoning in Marlowe v. State, 854 So.2d 1182 (Ala.Crim.App.2002):
"`In determining whether serious physical injury has occurred, "neither the jury nor this Court [are] required to ignore `common sense, common reason, and common observation.' Thompson v. State, 21 Ala.App. 498, 499, 109 So. 557 (1926)." Hale v. State, 654 So.2d 83, 86 (Ala.Crim.App.1994).
"`The evidence at trial revealed that Marlowe struck the 75-year-old victim in the head and robbed him of the contents of his wallet. The blow to [the victim's] head rendered him unconscious; he also suffered a laceration to the head requiring closure with metal staples. Two witnesses testified that they saw blood flowing from an open wound on [the victim's] head. Dr. David Keddy, the emergency-room physician who treated [the victim], testified that he suffered from an eight centimeter laceration to the head. The victim was given a CAT scan, and the results showed that the brain was within "normal and acceptable limits." (R. 43.) The wound was closed with metal staples; [the victim] was hospitalized and remained under observation for three days following the incident.
"`Dr. Keddy testified that this type of injury could cause serious harm or death, but that he did not consider [the victim's] injuries to be life threatening. Dr. Keddy testified that although he did not think the injuries created a substantial *144 risk of death, it would have been possible for [the victim] to have died if he had not received medical treatment, and that the injuries caused a serious and permanent disfigurement of [the victim's] head, but that he could not say whether they would cause him protracted or long-term health problems. Indeed, Dr. Keddy stated that he would have to refer questions of long-term impairment to Dr. Stallworth, the doctor who treated and observed [the victim] following his removal from the emergency room into a regular hospital room. Dr. Stallworth did not testify at trial.
"`At trial, [the victim] testified that his assailant struck him in the head with some sort of hard object, causing him to lose consciousness two or three times during the attack. Some five months after the attack, [the victim] testified that he still suffered from headaches, sharp pain, dizziness, blurred vision, and some memory loss as a result of the blow to his head. He also stated that he suffered some back problems from the fall. Additionally, [the victim] testified that he did not return to his office for over a month following the attack. [The victim] testified th[at] he was knocked unconscious two or three times during the attack, and that he was struck with some sort of hard object.
"`Given [the victim's] age, together with his testimony of his continued medical problems, the evidence was sufficient to create a jury question as to whether [the victim] suffered "serious physical injury" as defined in § 13A-1-2(9). Indeed, this Court has held similar evidence to be sufficient to create a jury question as to whether the victim had suffered "serious physical injury" as defined by statute. In Sizemore v. State, 686 So.2d 544 (Ala.Crim.App. 1996), this Court rejected a trial court's finding that an injury had to be "life-threatening" before it would constitute "serious physical injury." We stated:
"`"The [trial] court erroneously found that the facts of the case did not establish 'serious physical injury' because there was no evidence that the injury was life-threatening. The record reflects that the victim was injured as a result of an automobile collision with the appellant's car. As a result of the accident the victim had under [gone] surgery on her knee and wore a brace on that knee for two years. The victim testified that after the accident she cannot walk for as long as she could before the accident. This testimony was sufficient to show that the victim suffered `serious physical injury' as defined in the statute defining the offense of assault in the first degree."
"`686 So.2d at 545-46. Likewise, in James v. State, 654 So.2d 59, 60 (Ala. Crim.App.1994), this Court held that the State had established that the victim suffered "serious physical injury" by the victim's testimony that the defendant hit her with a baseball bat, that she was rendered unconscious, that she required stitches and spent several days in the hospital, that she still suffered from headaches some months after the attack, that she could not walk for about a week, and that she could not return to work for several months. See also Glass v. State, 671 So.2d 114, 120 (Ala. Crim.App.1995) ... (that victim sustained "serious physical injury" was established by evidence that victim continued to suffer from severe headaches more than a year after the assault, that the victim developed additional medical problems as a result of the attack, that the victim's injuries caused her to experience pain when chewing, and that the victim would continue to suffer from *145 these conditions for the remainder of her life) [, overruled in part on other grounds, Ex parte Gentry, 689 So.2d 916 (Ala.1996) ]. ...
"`This Court's duty is to determine whether there was legally sufficient evidence to support the conviction. Based on Sizemore, James, and Glass, we conclude that the State presented sufficient evidence indicating that the victim suffered "serious physical injury" to present a question for the jury's determination.... [B]ased on the particular facts of this case, to hold that Marlowe's attack on the victim did not result in "serious physical injury" would require this Court "to ignore `common sense, common reason, and common observation.'" Hale v. State, supra, 654 So.2d at 86 (quoting Thompson v. State, 21 Ala.App. 498, 499, 109 So. 557, 558 (1926)). The jury weighed the evidence and found Marlowe guilty of first-degree robbery. It is not this Court's responsibility to reweigh the evidence. The trial court correctly denied Marlowe's motion for a judgment of acquittal and his motion for a new trial.'"
Ex parte Marlowe, 854 So.2d at 1191, quoting Marlowe v. State, 854 So.2d at 1187-88.
In this case, the State presented very little evidence regarding Grace's injuries. James Lee testified that Grace was lying facedown on the ground after the collision and that he was badly cut and was bleeding. Sheila Gassett testified that Grace was incoherent and "about to go into shock" when she first saw him after the wreck, but that once she started talking to him, he answered her. (R. 37.) Gassett also testified that Grace had cuts and was bleeding, but that she had no knowledge of whether Grace suffered any internal injuries. The State presented no other evidence of Grace's injuries. Although Gassett rode to the hospital in the ambulance with Grace and stated that she believed that Grace was transferred from one hospital to another, she did not testify about why Grace was transferred, about any medical procedures Grace received, or about how long Grace stayed in the hospital. The State presented no medical records or a physician's testimony regarding the extent of any injuries or any treatment Grace may have received, and Grace did not testify at trial about any injuries he sustained, about any medical treatment he received, about any serious or protracted disfigurement, about any protracted impairment of his health, or about any protracted loss or impairment of the function of any bodily organ. Although Trooper McGowan testified that A.L.L. had been traveling approximately 81 miles per hour before he lost control of the vehicle and estimated that the vehicle was traveling at least 45 miles per hour when it struck the tree and caused Grace to be ejected from the vehicle, Trooper McGowan did not see Grace or have knowledge of any injuries Grace might have suffered because Trooper McGowan was not on the scene until days after the crash occurred.
The record before us discloses only that Grace had cuts and abrasions that caused bleeding and that he appeared to be incoherent and going into shock when Lee and Gassett first arrived but that Grace was nonetheless talking and trying to get up. Gassett and Lee's limited testimony was simply not sufficient to establish that Grace suffered any injury that created a substantial risk of death, or caused serious or protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ. The evidence presented in Marlowe, which was held to be sufficient to establish serious physical injury, regarding the victim's injuries, the medical treatment he received, and the physical difficulties he *146 continued to suffer was far more extensive than the scant evidence presented in this case regarding Grace's injuries. Even though the Alabama Supreme Court in Ex parte Marlowe shifted away from the more stringent definition of "serious physical injury" this Court applied in Wilson and Saylor, we conclude that the evidence presented in this case was not sufficient to satisfy even that less stringent definition.
However, we conclude that the evidence was sufficient to establish the lesser-included offense of assault in the third degree under § 13A-6-22(a)(2), Ala.Code 1975, which provides that "[a] person commits the crime of assault in the third degree if ... [h]e recklessly causes physical injury to another person." Section 13A-1-2(12), Ala.Code 1975, defines "physical injury" as "[i]mpairment of physical condition or substantial pain." Gassett and Lee's testimony regarding Grace's condition at the scene of the wreck was sufficient to establish that Grace suffered a "physical injury" and to establish a prima facie case of assault in the third degree.[3]
Because the State failed to present sufficient evidence that Grace sustained serious physical injury, it failed to establish a prima facie case of assault in the second degree, and the trial court erred in denying A.L.L.'s motion for a judgment of acquittal as to that charge. Therefore, we have no choice but to also reverse A.L.L.'s adjudication as a youthful offender based on the underlying charge of assault in the second degree and to remand this case for the trial court to adjudicate A.L.L. a youthful offender based on the underlying offense of assault in the third degree. See, e.g., Edwards v. State, 452 So.2d 506 (Ala.Crim.App.1983), aff'd, 452 So.2d 508 (Ala.1984). See also J.F.C. v. City of Daphne, 844 So.2d 608 (Ala.Crim.App. 2002).
Based on the foregoing, the judgment of the trial court is reversed and this cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, WISE, and WELCH, JJ., concur. BASCHAB, P.J., and SHAW, J., concur in the result.
NOTES
[1] Rule 15.3, Ala.R.Crim.P., provides that "[a] motion under Rule 15.2 must be made ... [i]n circuit court, at or before arraignment or by such later date as may be set by the court."
[2] Section 13A-6-21 was amended effective July 1, 2006; the amendment did not change subsection (a)(3).
[3] Indeed, A.L.L. concedes in his brief on appeal that the evidence was sufficient to establish that Grace suffered physical injury.