Julia Marie Edwards was convicted of vehicular homicide, under §32-5A-192, Ala. Code 1975. The Court of Criminal Appeals affirmed, without an opinion, but with two dissenting opinions. Edwards v. State,816 So.2d 92 (Ala.Crim.App. 2000). We granted certiorari review. Edwards challenges her conviction by arguing that the statute as written does not state a required element of mental culpability and that the trial court erred in refusing to instruct the jury on a mental state. We agree. We reverse the judgment of the Court of Criminal Appeals and render a judgment of acquittal.
On March 8, 1995, Edwards was rushing her six-month-old son, who had been sick for several days, to a doctor's office. Earlier that day, Edwards had telephoned the baby's doctor because of the child's poor condition. At that time, she made an appointment for the baby to see the doctor. Edwards testified that her son's condition worsened. She called the doctor again to explain his symptoms. The doctor told Edwards she should bring the baby to the doctor's office as soon as possible. While en route to the doctor's office, Edwards testified, the baby was making disturbing noises and his eyes rolled backward. She *Page 100 
testified that she feared he was dead. Edwards drove faster than the speed limit. She attempted to pass a vehicle in front of her. In doing so, she crossed a double yellow line marking a no-passing zone. Her vehicle collided with an oncoming vehicle, and the driver of that other vehicle was killed. There was no alcohol or drug use involved in the accident.
Edwards was indicted for manslaughter, a violation of § 13A-6-3, Ala. Code 1975, and vehicular homicide, a violation of § 32-5A-192, Ala. Code 1975. At trial, Edwards requested that on the charge of vehicular homicide the jury be instructed that in order to convict her it must find she had the mental state of criminal negligence. The state argued that the charge of vehicular homicide is a strict-liability offense and that no instruction as to mental state was necessary. The trial court refused to instruct the jury on a culpable mental state with regard to the vehicular-homicide charge. The jury was instructed on the elements of vehicular homicide; manslaughter; and criminally negligent homicide, a lesser included offense as to manslaughter. Edwards was convicted on the vehicular-homicide charge and was sentenced to three years' imprisonment. However, Edwards was acquitted on the charges of manslaughter and criminally negligent homicide, which require proof of a "reckless" mental state and a "criminally negligent" mental state, respectively. Edwards moved for a judgment of acquittal, which the trial court denied.
The vehicular-homicide statute, § 32-5A-192, under which Edwards was convicted, states:
 "(a) Whoever shall unlawfully and unintentionally
cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death.
 "(b) Any person convicted of homicide by vehicle or vessel shall be fined not less than five hundred dollars ($500) nor more than two thousand dollars ($2,000), or shall be imprisoned for a term not less than one year nor more than five years, or may be so fined and so imprisoned."
(Emphasis added.)
Edwards contends that "unlawfully" describes conduct rather than a state of mind. She argues that the language of the statute implies strict liability because it states no requirement of a culpable mental state. She notes that all other homicide statutes in the Code of Alabama express clear, categorical mental-state requirements. Thus, she claims, the trial court, in charging the jury on vehicular homicide, which is punishable as a felony,[1] was required to instruct the jury on a culpable mental state.
The State, however, argued in the trial court that vehicular homicideis a strict-liability offense. It argued that no criminal intent is needed to commit vehicular homicide and that the statutory term "unlawfully" means "without excuse or justification." Thus, the State claimed, when a person violates the traffic code, and a *Page 101 
death is caused as a result of the violation, the offense of vehicular homicide has been committed, regardless of whether any criminal intent is involved.
The Court of Criminal Appeals, in affirming Edwards's conviction, however, concluded in its unpublished memorandum that the term "unlawfully" in § 32-5A-192 describes the state of mental culpability necessary for the offense of vehicular homicide. The court determined that "unlawfully" is defined under the statute as "without legal excuse or justification." In its unpublished memorandum, the court relied on its previous opinion in Burnett v. State, 807 So.2d 573 (Ala.Crim.App. 1999), in which it had stated that "the culpable mental state of `unlawfully' must fall on the continuum of culpability somewhere between `knowingly' and `criminal negligence.'" 807 So.2d at 575 (citing Ex parte Long,600 So.2d 982 (Ala. 1992)).[2]
In the past, Justice Cook has voiced concern over the constitutionality of the vehicular-homicide statute. See Ex parte Beck, 690 So.2d 346
(Ala. 1997) (Cook, J., concurring specially); Ex parte Knowles,689 So.2d 832 (Ala. 1997) (Cook, J., concurring specially). In Knowles, Justice Cook wrote:
 "I write specially to express my concern that a statute that punishes an act of simple negligence as a felony raises serious constitutional questions. . . . [W]e should consider whether [the] conviction under § 32-5A-192, based on acts that constitute no more than simple negligence, violates the right to due process guaranteed by the United States and Alabama Constitutions."
689 So.2d at 833.
Justice Cook stated that "[s]ubjecting nonculpable simple negligent conduct to criminal penalties as severe as those provided in §32-5A-192, without requiring a culpable mental state, raises serious constitutional questions." Id. at 834. However, the record in this present case does not support a challenge to § 32-5A-192 on constitutional grounds and, therefore, we do not further consider this issue.
A statute creating a criminal offense, with the exception of a strict-liability statute, requires a culpable mental state. Section13A-2-4(b), Ala. Code 1975, provides:
 "Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
(Emphasis added.)
The Alabama Criminal Code defines the following terms relating to culpable mental states:
 "(1) INTENTIONALLY. A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his purpose is to cause that result or to engage in that conduct.
 "(2) KNOWINGLY. A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware *Page 102 
 that his conduct is of that nature or that the circumstance exists.
 "(3) RECKLESSLY. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2, acts recklessly with respect thereto.
 "(4) CRIMINAL NEGLIGENCE. A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. A court or jury may consider statutes or ordinances regulating the defendant's conduct as bearing upon the question of criminal negligence."
§ 13A-2-2, Ala. Code 1975. The commentary[3] to § 13A-2-2
states:
 "This section attempts to identify, define and reasonably delimit the main culpable mental states involved in the criminal law. The four states are `intentionally,' `knowingly,' `recklessly' and `criminal negligence'; and unless the offense is one of strict liability, at least one of these mental states is essential for liability."
(Emphasis added.) The commentary to § 13A-2-2 shows that the Legislature delineated and defined these four particular terms of mental culpability in order to alleviate any confusion in applying varying concepts of mental states in the Criminal Code. It is also notable that, in explaining the four culpable mental states set out in the Criminal Code, the commentary describes "term[s] of mental culpability," including the term "unlawfully," as being "necessarily difficult to articulate, [and] sometimes . . . vaguely or only partly defined, or otherwise . . . imprecise or inconclusive, unclear or ambiguous, even confusing or contradictory, or overrefined with technical, obscure and often subtle, if not dubious, distinctions."
As provided in § 13A-2-4(b), a statute must "clearly indicat[e]" an intent by the Legislature to impose strict liability. Nothing in §32-5A-192 clearly indicates that the Legislature intended for this statute to impose strict liability for the commission of vehicular homicide. The commentary to § 13A-2-4 states, "An express statement is required in the statute defining the offense if strict liability is being imposed." Section 32-5A-192 was first enacted in 1980, after the enactment of § 13A-2-4 in 1977. If a strict-liability offense was intended, we can presume that the Legislature would have made an express statement to that effect. Ex parte Phillips, 771 So.2d 1066 (Ala. 2000). Therefore, we conclude that the Legislature *Page 103 
did not intend for vehicular homicide to be a strict-liability offense, and that some degree of mens rea is required.[4]
The Court of Criminal Appeals, as previously noted, determined in its unpublished memorandum in this case that the mental culpability for vehicular homicide could be found in the term "unlawfully" (relying onBurnett v. State, supra). The court in Burnett defined "unlawfully" as "without legal excuse or justification." 807 So.2d at 576. In Burnett, however, only two of the judges on the Court of Criminal Appeals agreed that "unlawful" was the actual mental culpability required by §32-5A-192. Judge McMillan concurred in the result, stating that he "[did] not believe that the mere inclusion of the word `unlawfully' in the statute supplies the requisite mental state," but that the defendant's conduct must constitute something more than mere simple negligence.807 So.2d at 578. Judges Cobb and Fry dissented. Judge Cobb wrote that "the word `unlawfully' describes a person's conduct, not a person's state of mind." 807 So.2d at 582. Judge Cobb stated that "[t]he main opinion is correct in determining that our vehicular homicide statute should require a culpable mental state, for without such a requirement the vehicular homicide statute imposes a severe criminal liability upon the happening of a certain set of circumstances, namely, a death caused by a person who commits a traffic violation." 807 So.2d at 582 -83. Judge Fry wrote in his dissent in Burnett:
 "The main opinion, with its conclusion that `"unlawfully," as it is used in § 32-5A-192, Ala. Code 1975, means "without legal excuse or justification,"' pulls and stretches bits and pieces of various legal definitions to attempt to arrive at a constitutionally definable state of mental culpability. However, the weaving is too thin, and like so many gossamer threads holding together an ethereal garment, the result is more apparent than real."
807 So.2d at 585 -86.
The State argues, however, that § 13A-2-3, Ala. Code 1975, applies. That section provides:
 "The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If that conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of `strict liability.' If a culpable mental state on the part of the actor is required with respect to any material element of an offense, the offense is one of `mental culpability.'"
Under this statute, the State argues, the minimum requirement necessary to violate § 32-5A-192 is a "voluntary act or . . . omission." Thus, so the State contends here,[5] the vehicular-homicide statute requires, at a minimum, a voluntary act or omission and unlawful conduct and provides that the result of the voluntary and unlawful act or omission is a culpable mental *Page 104 
state that is something more than mere negligence.
While § 13A-2-3 refers to a person's performance of a voluntary act or omission as a minimum requirement for criminal liability, that statute applies to all offenses, including strict-liability offenses. We agree with the dissenting opinion of Judges Cobb and Fry in Burnett, to the extent it rejects the view that the word "unlawfully" supplies an element of intent. However, the fact that § 13A-2-3 applies to strict-liability offenses does not end our inquiry. Because §32-5A-192 cannot be classified as a strict-liability offense, §13A-2-3 does not support the State's position.
This Court has previously grappled with the question of what degree of culpability is required by § 32-5A-192.[6] See Ex parte Jordan,486 So.2d 485 (Ala. 1986); Ex parte Long, 600 So.2d 982 (Ala. 1992). Both in Jordan and in Long, the defendant had been indicted for intentional murder, in violation of § 13A-6-2, Ala. Code 1975, and the facts supported an instruction on lesser included offenses. Section 13A-1-9
provides the following requirements for an instruction on, or a conviction of, a lesser included offense:
 "(a) A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
 "(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
 "(3) It is specifically designated by statute as a lesser degree of the offense charged; or
 "(4) It differs from the offense charged only in the respect that a less serious injury or risk d of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission.
 "(b) The Court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."[7]
In Jordan, the defendant asked for an instruction on vehicular homicide, § 32-5A-192, as a lesser included offense as to murder. The trial judge refused and instructed only on murder, manslaughter, and criminally negligent homicide. Jordan was convicted of murder and was sentenced to 40 years in the penitentiary. *Page 105 
This Court held that, under the facts there presented, vehicular homicide was a lesser included offense as to murder and that an instruction on vehicular homicide would have been appropriate. However, because the jury had been instructed on the lesser offenses of manslaughter and criminally negligent homicide and returned a verdict of guilty on the murder charge, this Court held that the failure to instruct on vehicular homicide was harmless error. Jordan, 486 So.2d at 489. The Court said vehicular homicide was a lesser included offense as to murder because the same facts that would have established the crime of murder, or fewer facts, would have established the offense of vehicular homicide, see § 13A-1-9(a)(1), or a lesser kind of culpability was required than was required to establish murder, see § 13A-1-9(a)(4).
In Long, the defendant requested an instruction on vehicular homicide as a lesser included offense as to murder, but the trial court denied the request, charging only on murder, manslaughter, and criminally negligent homicide. Long was convicted of manslaughter and was sentenced to 18 years' imprisonment. This Court found Long indistinguishable from Jordan
on the issue of the propriety of an instruction on vehicular homicide as a lesser included offense as to murder. Long, 600 So.2d at 985. Then, the Court noted that in Jordan, manslaughter had been rated as more culpable than vehicular homicide and that the murder verdict in Jordan made it unnecessary for the Court to rate the culpability of conduct falling below manslaughter. But, in Long, where the defendant had been found guilty of manslaughter and acquitted of murder, it was necessary to stratify the degrees of culpability because, if vehicular homicide fell in between manslaughter and criminally negligent homicide, then, for all appearing, the jury might have convicted the defendant of vehicular homicide instead of manslaughter, if the jury had been instructed on vehicular homicide, and, if the jury had done so, then the defendant would have received a lesser sentence.
This Court in Long, noting the more severe punishment available for vehicular homicide than for criminally negligent homicide, rated vehicular homicide as more culpable than criminally negligent homicide and concluded:
 "Because vehicular homicide is the next lesser included offense under manslaughter, at least under the circumstances presented here, the failure to instruct on vehicular homicide cannot be harmless error, as it was in Jordan. Nothing in the jury's verdict supports the contention that it could not have returned a verdict on that offense instead of manslaughter if it had been given the opportunity, or that any finding implicit in the jury's verdict necessarily precludes a verdict on homicide by vehicle. By returning a verdict on manslaughter, the jury has found that Long acted recklessly, but that finding could also support a verdict of vehicular homicide. Therefore, the affirmance by the Court of Criminal Appeals is inconsistent with Jordan, at least as we reinterpret the relative degrees of culpability of vehicular homicide and criminally negligent homicide, and that court's judgment is due to be reversed."
600 So.2d at 987.
In order to apply a level of intent commensurate with the maximum punishment of five years on a conviction of vehicular homicide, Long holds that there must be some culpability above criminal negligence. Id. Criminal negligence is conduct that causes one not to perceive a risk that is of such a degree that the failure to perceive it constitutes a gross deviation from the standard of care that would be experienced *Page 106 
by a reasonable person in the same situation. § 13A-2-2(4), Ala. Code 1975. Criminally negligent homicide is a Class A misdemeanor punishable by imprisonment for not more than one year, § 13A-5-7(a)(1), Ala. Code 1975, and by a fine not more than $2,000, § 32-5-12(a)(1), Ala. Code 1975. One tier above the culpability of criminally negligent conduct is the culpability involved in reckless conduct, defined as conduct undertaken or committed with an awareness of, and a conscious disregard for, a substantial and unjustifiable risk of such a degree that to disregard it constitutes a gross deviation from the standard of care that would be exercised by a reasonable person in the same situation. §13A-2-2(3), Ala. Code 1975. Manslaughter grounded upon a defendant's recklessly causing death is a Class B felony, punishable by a term of up to 20 years and a fine not to exceed $10,000. § 13A-5-6, Ala. Code 1975; § 13A-5-11. In Long, we stated in dictum that conduct in violation of the Rules of the Road, ranging from reckless driving[8] to failure to exercise care[9] and driving upon the sidewalk,[10] could support a conviction of vehicular homicide, with punishment by imprisonment for not less than one year nor more than five years. §32-5A-192(b), Ala. Code 1975. That would permit conduct associated with a misdemeanor or a traffic violation to be punished as a felony when it causes death.
Faced with the problematic phraseology "unlawfully and unintentionally" and with the settled provisions of our criminal law fastening different punishments to varying degrees of intent associated with wrongdoing, we are obliged to construe § 32-5A-192, if possible, in harmony with these principles, so as to achieve the legislative intent of punishing vehicular homicide. A statute should be construed not only in light of its language but also in light of its purpose, its object, its relation to other laws, and the conditions that may arise under its provisions.State ex rel. Richardson v. Morrow, 276 Ala. 385, 162 So.2d 480 (1964). We cannot conclude that by enacting this statute the Legislature intended to displace the general statutes governing homicides. See 1983 Ala. Acts 959, Act No. 83-620, § 2 (providing that the vehicular-homicide statute is supplemental to other laws not inconsistent with that Act). The question whether a principle of law that would provide multiple bases for charging the same conduct, with varying degrees of punishment, violates the right to equal protection guaranteed under the Fourteenth Amendment to the United States Constitution is not here presented.
Edwards, while driving at a speed exceeding the legal speed limit, attempted to pass a vehicle in front of her, and in so doing, crossed a double yellow line marking a no-passing zone. The dictum in Long suggests that such conduct, when it can be characterized as more culpable than criminal negligence (i.e., as conduct undertaken or committed by one who fails to perceive a risk that is of such a degree that the failure to perceive it constitutes a gross deviation from the standard of care that would be exercised by a reasonable person in the same situation) and as less culpable than reckless conduct (i.e., conduct undertaken or committed by one who is aware of a substantial and unjustifiable risk but consciously disregards it), constitutes vehicular homicide.
At the conclusion of the presentation of the evidence, the trial court stated: *Page 107 
 "The standard charge under this statute suggests that the court charge on one of the mental states set forth in the Criminal Code. So the committee establishing the Pattern Jury Instructions [(Criminal)] clearly believes that a culpable mental state of some sort is necessary and suggests that any mental state other than intentional conduct would suffice based upon whatever the evidence in the case might be. The Code itself says that no statute will be deemed to be a strict-liability offense unless the statute makes it absolutely clear that strict liability is intended. So looking at that particular standard in the Code itself, what do you make of the word `unlawful'? . . . What does the word `unlawfully' add to the statute if it is not some requirement of one of the culpable mental states set forth in [sic; by?] the Legislature in the Criminal Code? . . . Is `unlawfully' just a redundancy or does it mean something else?"
The State responded by challenging the precedential value of committee comments and contending that the vehicular-homicide statute was a strict-liability offense. The trial court ultimately concluded that the vehicular-homicide statute "covers any unintentional conduct which may violate the law and therefore, it's broader than criminally negligent homicide." The trial court then gave a charge dealing with vehicular homicide, a charge that adhered strictly to the text of the statute, and it rejected Edwards's attempt to have the court charge the jury on criminal negligence as a requisite mental state. Edwards did not request an instruction telling the jury that, as dictum in Long suggests, the intent must fall somewhere between criminal negligence and reckless conduct in order to support a conviction for vehicular homicide.
The jury in Edwards's case was charged on manslaughter and on criminally negligent homicide as a lesser included offense as to manslaughter, and on vehicular homicide. The jury found Edwards guilty of only vehicular homicide. We conclude that the trial court's initial reservations about tying the requisite mental state to the word "unlawfully" were sound. We endorse the "Use Note on Mens Rea Element" that accompanies the Alabama pattern jury instruction applicable to § 32-5A-192; that note states that "unintentional" is not defined in the Code but that the committee drafting the instruction assumes that word to refer to all forms of mens rea except that described by the word "intentional." The Use Note then refers to the previously referenced defined terms governing mens rea elements — "intentionally," "knowingly," "recklessly," and "criminal negligence."[11] Then, the Use Note correctly concludes:
 "The judge should insert the appropriate mens rea element considering the indictment and the evidence before the court. `There are few, if any, strict liability offenses in this Criminal Code. . . .' Ala. Code § 13A-2-3 Commentary. See also § 13A-2-4(b)."
Alabama Pattern Jury Instructions: Criminal, 14-4 to 14-6 (3d ed. 1994). When the indictment charges the appropriate mens rea element and the trial court finds the evidence sufficient to support a finding of that element, the sentence imposed upon a convicted defendant should not exceed the punishment appropriate for such conduct under other provisions of the Criminal Code. We reject the *Page 108 
dicta in Long suggesting that the culpability of the crime of vehicular homicide must fall between criminal negligence and recklessness. We overrule any other aspect of Long that conflicts with this opinion.
Justice Maddox, dissenting, 816 So.2d at 111, expresses his views on the legislative intent behind § 32-5A-192, Ala. Code 1975. His doing so underscores the fact that this case turns on one's conception of legislative intent. However, the fact that this state has long punished as second-degree manslaughter conduct committed during the commission of a misdemeanor that results in death and has imposed for that conduct a maximum punishment of imprisonment for one year, lends little, if anything, to an understanding of the legislative intent behind §32-5A-192, Ala. Code 1975.[12] The fact that the United States Supreme Court long ago upheld, against constitutional challenge, Alabama's wrongful-death statute, with its rule allowing punitive damages in a civil proceeding for conduct that does not rise above simple negligence, lends little, if any, support for the view that the Legislature in 1983, by enacting § 32-5A-192, intended to punish, by fines and
imprisonment from one to five years, conduct commensurate with the most minimal level of a violation of law.[13]
Justice Maddox states in his dissent: "[I]t appears to me that the Legislature had the power to adopt a statute that would meet society's needs to preserve human life and which would punish an individual for causing the death of another, even though the wrongdoer may not havepossessed a culpable mental state at the time." 816 So.2d at 111. (Emphasis added.) However, the power of the Legislature to enact a strict-liability offense is not here at issue. As previously noted, § 13A-2-4(b) states that a statute will create a strict-liability offense only if the statute clearly shows the Legislature intended to create such an offense; § 32-5A-192 shows no such clear indication.
Justice Maddox also states: "I believe the Legislature intended to enact a statute that did exactly that [punish individuals for mere carelessness] when it adopted § 32-5A-192, Ala. Code 1975." To come to this conclusion, one must read the word "unintentionally" as used by the Legislature in § 32-5A-192 as embracing even the most minimal level of conduct contrary to law. The earlier version of § 32-5A-192
was found constitutionally defective because it provided levels of punishment ranging from misdemeanor level to felony level.[14] Had the Legislature in 1983 opted to deal with the constitutional issue by deleting the provision for punishment for more than one year, one could have concluded that the Legislature intended to punish only conduct at the most minimal level of offense contrary to law. However, the statute was amended so as to eliminate any punishment for a misdemeanor, i.e., any punishment for less than one year, but it retained the provision for punishment from one to five years. Hence, the more reasonable assumption as to legislative intent is that the Legislature drafted § 32-5A-192
to punish conduct above the most minimal level of offense contrary to law.
Justice Maddox's dissent suggests in a footnote that the definitions in the Criminal Code are not applicable to § 32-5A-192. The 1983 amendment to what is codified *Page 109 
as § 32-5A-192 (1983 Ala. Acts 959, No. 83-620, § 2) provides that the act is supplemental to other laws not inconsistent with it. The Legislature used the word "unintentionally" in a statute expressly declared to be supplemental to other laws not inconsistent with it, in a setting where research reveals no definition of "unintentionally" in the Code and indicates that the only definition of "intentional" appears to be in § 13A-2-2. The Legislature indicated its intent by stating that what is now § 32-5A-192 supplements other laws not in conflict; this statement supports the view that the categories of criminal intent set forth in § 13A-2-2 apply to § 32-5A-192, notwithstanding the reference in § 13A-2-2 that applies them to the Criminal Code.
Edwards's indictment did not describe a necessary culpable mental state, and the court refused her request for an instruction on a culpable mental state. An indictment under § 32-5A-192(b) should charge an appropriate mental state based on § 13A-2-2(2) to (4). Because Edwards was acquitted of both manslaughter (ruling out recklessness) and criminal negligence, the court should have granted Edwards's postjudgment motion for a judgment of acquittal.
Accordingly, we reverse the judgment of the Court of Criminal Appeals and render a judgment of acquittal.
REVERSED AND JUDGMENT RENDERED.
Hooper, C.J., and Houston and England, JJ., concur.
Johnstone, J., concurs specially.
See, J., concurs in the result.
Maddox, J., dissents.
Brown, J., recuses herself.*
* Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.
[1] Vehicular homicide carries a punishment of incarceration from one year to five years. Section 13A-5-6, Ala. Code 1975, lists the term of punishment for a Class C felony as "not more than 10 years or less than 1 year and 1 day." Section 13A-5-7, Ala. Code 1975, lists the term of punishment for a Class A misdemeanor as "not more than one year." Thus, vehicular homicide is analogous to a Class C felony because of the authority conferred by the statute to impose punishment commensurate with the punishment applicable to a Class C felony.
[2] We have today reversed the judgment in Burnett v. State. See Exparte Burnett, 807 So.2d 586 (Ala. 2001).
[3] Our consideration of the commentary to § 32-5A-192 is tempered by § 1-1-14(b), Ala. Code 1975, which states that "[a]ll historical citations and notes set out in this Code are given for the purpose of convenient reference, and do not constitute part of the law." In any event, we find this commentary persuasive on the question whether the term "unlawfully" in § 32-5A-192 provides a mental state.
[4] In its original enactment, the vehicular-homicide statute contemplated a range of punishment and used terms consistent with misdemeanors and felonies. This statute, the former § 32-5A-192(b), was declared unconstitutional because of its joinder of misdemeanors and felonies, in Whirley v. State, 481 So.2d 1151 (Ala.Crim.App. 1985). In 1983, the statute was amended to delete the provision allowing the offense to be punished as a misdemeanor. See 1983 Ala. Acts 959, Act No. 83-620, § 1 (effective July 29, 1983).
[5] In the trial court, the State argued that § 32-5A-192 is a strict-liability statute.
[6] These difficulties in answering that question stem from the fact that we are dealing with a statute that at its inception was a hybrid covering both misdemeanors and felonies. See n. 4.
[7] In Long, we quoted the rule governing instructions on lesser offenses:
 "`An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.'"
600 So.2d at 986 (quoting Chavers v. State, 361 So.2d 1106, 1107
(Ala. 1978); citations omitted).
[8] § 32-5A-190, Ala. Code 1975.
[9] § 32-5A-213, Ala. Code 1975.
[10] § 32-5A-52, Ala. Code 1975.
[11] Because § 32-5A-192(b) uses the word "unintentionally," §13A-2-2(1), defining "intentionally," has no field of application.
[12] See Pippin v. State, 19 Ala. App. 384, 387, 97 So. 615, 617-18
(1923) (cited in Justice Maddox's dissenting opinion), where the defendant was sentenced to serve one year.
[13] See Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112 (1927), also cited in Justice Maddox's dissenting opinion.
[14] See n. 4.