COBB, Chief Justice
(dissenting).
I respectfully dissent. The majority reverses the judgment of the Court of Criminal Appeals and criticizes that court for “misconstruing” Ex parte Edwards, 816 So.2d 98 (Ala.2001), and Ex parte Burnett, 807 So.2d 586 (Ala.2001), which relied on Ex parte Edwards. It is easy to grasp why the Court of Criminal Appeals would have difficulty construing those cases— they raise more questions than they answer. I continue to believe that this Court wrongly decided Edwards by attempting to uphold the vehicular-homicide statute, Ala.Code 1975, § 32-5A-192, without addressing the inherent constitutional defects of the statute.[1] See Burnett v. State, 807 So.2d 588, 589 (Ala.Crim.App.2001) (Cobb, J., dissenting). Accordingly, I cannot join the majority in reversing the judgment of the Court of Criminal Appeals in reliance on Edwards.
In Edwards, this Court expressly declined to address the constitutionality of the vehicular-homicide statute. Instead, the Court held that the vehicular-homicide statute was not a strict-liability statute. The Court also held that the term “unintentionally” as used in the statute referred to one or more of the following types of mens rea: knowingly, recklessly, or with criminal negligence. Thus, the Edwards Court exercised the prerogative of the legislature and amended the vehicular-homicide statute to include culpable mental states normally required for a violation of a criminal statute.[2] In the process, this Court disregarded a fundamental tenet of American jurisprudence: “Historically, the narrowest or strictest construction is mandated for criminal statutes.” Burnett v. State, 807 So.2d at 591 (Cobb, J., dissenting) (citing Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993)).
However well meaning the Edwards majority’s attempt to preserve the vehicular-homicide statute,[3] the opinion instead rais *152 es additional significant problems. To pass constitutional muster, a criminal statute must clearly inform those who are subject to it what is commanded or what is forbidden. See Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939)) (“Due process requires that all ‘be informed as to what the State commands or forbids.’ ”). The criminal statute must be worded so that citizens of common intelligence are not forced to guess at its meaning. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008) (citing Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), and Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)) (“A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited .... ”). The term “unlawfully and unintentionally” as used in the vehicular-homicide statute was “problematic phraseology,” even to the legally sophisticated Justices of the Edwards Court. 816 So.2d at 106. Those words plainly do not inform a person of ordinary understanding that the vehicular-homicide statute prohibits conduct that is knowing, reckless, or criminally negligent.
With its decision today, the Court compounds the problems created by Edwards by expanding the original holding of Edwards. In addition to its erroneous holding concerning the meaning of the term “unlawfully and unintentionally” in the vehicular-homicide statute, Edwards holds only that because Edwards was acquitted of manslaughter and criminal negligence, she was necessarily acquitted of any culpable mental state applicable to vehicular homicide; the Court therefore entered a judgment of acquittal. The discussion of an instruction to the jury on an appropriate mental state in Edwards is entirely irrelevant to its holding. As the majority here recognizes, the Edwards Court did not address whether the failure to charge a specific culpable mental state constituted a fatal defect in the indictment. However, the majority would now state that Edwards established an additional legal principle: that proper jury instructions are sufficient to cure the failure in an indictment to charge a culpable mental state. Under the majority’s view of Edwards, a defendant may be charged with vehicular homicide and not be informed of the mental state that results in his or her liability until the jury is charged, i.e., after the defendant is required to have presented his or her defense. Edwards did not so hold and cannot properly be expanded to support such a conclusion.[4]
*153 Similarly, the majority relies on Edwards to support its conclusion that an indictment charging vehicular homicide is sufficient to state a charge if it merely tracks the language of the statute without specifically alleging one of the necessary culpable mental states set forth in Edwards, even though Edwards did not address that issue. As the majority notes, Edwards was decided at a time when a trial court had no jurisdiction over an indictment that failed to state an essential element of the charge.[5] Thus, according to the majority, the “holding in Edwards that ‘the [trial] court should have granted Edwards’s ... motion for a judgment of acquittal,’ 816 So.2d at 109, clearly indicated that the failure of the indictment to charge an appropriate mental state had not deprived the trial court of subject-matter jurisdiction over the vehicular-homicide charge.” 42 So.3d at 150.
I believe that the silence of the Edwards Court on the jurisdictional issue while reaching the merits of the case does not amount to a holding that jurisdiction existed or that the indictment in Edwards was sufficient to charge an offense. “Arguments based on what courts do not say, logically speaking, are generally unreliable and should not be favored by the judiciary...." Ex parte James, 836 So.2d 813, 818 (Ala.2002); see also Haley v. Barbour County, 885 So.2d 783, 789 n. 7 (Ala.2004) (declining to hold that a previous case silently decided a threshold jurisdictional question by reaching the merits). Edwards does not support the proposition that an indictment charging vehicular homicide that fails to include a necessary culpable mental state is sufficient to charge an offense so long as it tracks the language of the vehicular-homicide statute.
Moreover, this Court need not overrule Edwards to recognize that the judgment of the Court of Criminal Appeals in this case is due to be affirmed. Even though A.L.L.’s indictment tracks the language of the vehicular-homicide statute, § 32-5A-192(a), Ala.Code 1975, the indictment does not specifically charge any of the culpable mental states the Edwards Court held are essential elements of vehicular homicide. Therefore, the indictment fails to charge A.L.L. with the crime of vehicular homicide as defined by Edwards. Nevertheless, the majority, quoting Rule 13.2(e), Ala. R.Crim. P., concludes that the indictment was “ ‘sufficiently definite to inform [A.L.L.] of the offense charged,’ ” 42 So.3d at 150, merely because it tracked the language of the vehicular-homicide statute. Under the majority’s approach, an indictment states a charge so long as it tracks *154 the language of a criminal statute — whether or not the statute, standing alone, is sufficient to inform the accused of the applicable culpable mental state. This approach conflicts with the Alabama Constitution, with state and federal due-process requirements, and with this Court’s well established precedent.[6]
Further, as the Court recognized in Edwards, a defendant who “unlawfully and unintentionally” causes the death of another person while violating a traffic law when “the violation is the proximate cause of the death,” § 32-5A-192(a), Ala.Code 1975, is not necessarily guilty of vehicular homicide. Edwards. That is, “unintentionally and unlawfully” causing the death of another person while violating a traffic law is not a crime unless the death was caused “knowingly,” “recklessly,” or with “criminal negligence.”[7] Under Edwards, at least one of these specific culpable mental states is a necessary element of the offense of vehicular homicide, 816 So.2d at 99, even though these culpable mental states are not found in the vehicular-homicide statute and exist only by application of caselaw. The indictment here merely tracks the language of the statute, and, contrary to the majority’s holding, fails to charge a crime because it fails to charge any required culpable mental state.[8]
In addition to Edwards, the majority cites Sullens v. State, 878 So.2d 1216, 1234 (Ala.Crim.App.2003), “and the cases cited *155 therein,” in support of its conclusory holding that the indictment was “ ‘sufficiently definite to inform [A.L.L.] of the offense charged.’ ” 42 So.3d at 150. The majority’s reliance on Sullens is misplaced; Sul-lens was bad law. See Sullens, 878 So.2d at 1234 (Shaw, J., concurring in part and dissenting in part, joined by Cobb, J.). Furthermore, the cases cited in Sullens do not support the majority’s decision today. For example, Sullens relied heavily on portions of Hunt v. State, 642 So.2d 999, 1022-26 (Ala.Crim.App.1993), aff'd, 642 So.2d 1060 (Ala.1994). In turn, Hunt relied on Ex parte Harper, 594 So.2d 1181 (Ala.1991). See Sullens, 878 So.2d at 1227 (“ ‘We conclude that Ex parte Harper ... controls the result in this case.’ ” (quoting Hunt, 642 So.2d at 1026) (ellipsis in Sullens )). Harper is a plurality opinion that “raises many more questions than it answers.” Hunt, 642 So.2d at 1026. Nevertheless, the Court of Criminal Appeals in Hunt followed Harper solely because that court “ ‘is bound by the decisions of the Alabama Supreme Court. Ala.Code 1975, § 13-3-16.’” Sullens, 878 So.2d at 1227 (quoting Hunt, 642 So.2d at 1026). However, nearly 10 years after Harper was decided and 8 years after Hunt was decided, a majority of this Court decided Ex parte Hampton, 815 So.2d 569, 571 (Ala.2000). Under Hampton, an indictment must specifically charge the element of mens rea, even if that element is not specifically set out in the Code section defining the offense the indictment tracks. Therefore, contrary to Sullens and the cases cited therein, Hampton provides the controlling rule of law in this case.
Finally, the State argues that A.L.L. never demonstrated that the failure to charge a culpable mental state in the indictment prejudiced his substantial rights. This argument is fundamentally unsound. Substantial rights are inherently violated when a citizen of this State is tried, convicted, and sentenced on the basis of an indictment that does not charge the citizen with a crime. See, e.g., Ala. Const. Art. I, § 8 (“[n]o person shall for any indictable offense be proceeded against criminally by information,” except in circumstances not applicable in this case); Ex parte N.W., 748 So.2d 190, 191 (Ala.1999) (“The Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States require, among other things, that the State give a juvenile defendant written notice of the charges against her.”).
In particular, the State argues that, because A.L.L. moved to dismiss the indictment for failure to state a charge, A.L.L. was not prejudiced because, the State argues, he was clearly aware that the crime of vehicular homicide required a culpable mental state and because he could have simply moved for a more definite statement under Rule 13.2(e), Ala. R.Crim. P., if he needed additional information to defend against the charge. I cannot join the majority in adopting this line of reasoning. See 42 So.3d at 150 (“Had A.L.L. felt that additional details concerning the alleged offense were needed, he could have made a motion for more definite statement. See Rule 13.2(e), Ala. R.Crim. P.”).
Rule 13.2(e), Ala. R.Crim. P., exists to “provide[] a necessary safeguard for the defendant, in that ... the defendant can compel the state to submit additional details of the offense not required to be set out in the body of the indictment.” Committee Comments to Rule 13.2, Ala. R.Crim. P.; cf. Lanier v. State, 733 So.2d 931, 936 (Ala.Crim.App.1998) (“An indictment must include all of the essential elements that constitute the offense, and it must not leave any element open to inference.” (emphasis added)). The majority incorrectly concludes that a defendant ought to seek a more definite statement *156 under Rule 13.2(e) when the indictment omits a necessary element of the offense, which is required to be set out in the body of the indictment. Such a motion would, among other things, waive the defendant’s substantial right to an indictment rendered by a grand jury and the right not to be tried and convicted on information composed by the prosecutor without the grand jury’s involvement.[9]
Under the Alabama Constitution, only a grand jury may determine whether a person should be tried for an indictable offense. See Ala. Const.1901, Art. I, § 8. To make that ultimate determination, the grand jury must necessarily consider each of the essential elements of the charged offense. When the indictment omits any of those elements, neither the prosecutor nor the court may supply them. Permitting them to do so would improperly
“allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment [and] deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts [and legal allegations] not found by, and perhaps not even presented to, the grand jury which indicted him.”
Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).
Thus, a defendant cannot be forced to move for a more definite statement as to the essential elements of the crime, which are required to be set out in the body of the indictment to begin with. Cf Rule 13.5(a), Ala. R.Crim. P. (“The court may permit a charge to be amended without the defendant’s consent, at any time before verdict or finding ... if the substantial rights of the defendant are not 'prejudiced.” (emphasis added)); and Committee Comments to Rule 13.2, Ala. R.Crim. P. (noting that a motion to amend filed under Rule 13.2(e), Ala. R.Crim. P., is appropriate for supplying additional “details of the offense not required to be set out in the body of the indictment”).
Accordingly, I conclude that the indictment in this case fails to state a charge, that A.L.L.’s substantial rights were prejudiced by that failure, and that the judgment of the Court of Criminal Appeals, reversing the trial court’s judgment adjudicating A.L.L. a youthful offender based on the underlying offense of vehicular homicide, should be affirmed. Therefore, I respectfully dissent.
MURDOCK, J., concurs.

. Even in light of the majority's refusal to address the constitutionality of § 32-5A-192, I believe that A.L.L. had a strong basis for presenting that argument in this case.

. Etowah County Comm’n v. Hayes, 569 So.2d 397, 398 (Ala.1990) ("[T]he judicial branch of government is constrained not to substitute its judgment for that of the legislature and thus usurp the plenary power of that branch." (citing Finch v. State, 271 Ala. 499, 124 So.2d 825 (1960))); Town of Loxley v. Rosinton Water, Sewer & Fire Prot. Auth., 376 So.2d 705, 708 (Ala.1979) (“[W]e may not amend statutes so as to make them express what we may conceive the legislature would have done or should have done. May v. Head, [210 Ala. 112, 96 So. 869 (1923)].... The purpose of interpretation is not to improve a statute but rather to explain the express language used in the statute. Lewis v. Hitt, 370 So.2d 1369 (Ala.1979).").

.The vehicular-homicide statute provides that one who "unlawfully and unintentionally” causes the death of another person while violating a traffic law is guilty of homicide. § 32-5A-192(a), Ala.Code 1975. I note the long history of special writings arguing that the statute is unconstitutional because it does not require a culpable mental state. See Ex parte Beck, 690 So.2d 346 (Ala.1997) (Cook, J., concurring specially); Ex parte Knowles, 689 So.2d 832, 833-35 (Ala.1997) (Cook, J., concurring specially); Burnett v. State, 807 *152 So.2d at 589-93 (Cobb, J., dissenting); Edwards v. State, 816 So.2d 92, 92-98 (Ala.Crim. App.2000) (Cobb and Fry, JJ., dissenting), rav’d, 816 So.2d 98 (Ala.2001); Burnett v. State, 807 So.2d 573, 580-86 (Ala.Crim.App.1999) (Cobb and Fry, JJ., dissenting), rav’d, 807 So.2d 586 (Ala.2001).
The legislature could easily correct the noted constitutional defect in the vehicular-homicide statute by adding language specifying applicable culpable mental states. Out of respect for the Alabama Constitution and the families of vehicular-homicide victims in Alabama, I urge the legislature to speedily remedy that defect. Burnett v. State, 807 So.2d at 585 (Fry, J., dissenting) (''[T]he hurt caused by a traffic fatality is due our eminent respect, but so is the Constitution of this State.”). Absent legislative action, I urge the members of the Alabama State Bar to continue to place the issue of the constitutionality of the statute squarely before this Court, and I urge this Court to address the issue at its earliest opportunity.

. Alabama Dep’t of Envtl. Mgmt. v. Town of Lowndesboro, 950 So.2d 1180, 1194 (Ala.Civ.App.2005) (plurality opinion by Murdock, J.) (" 'For a case to be stare decisis on a particular point of law, that issue must have been *153 raised in the action, decided by the court, and its decision made part of the opinion of the case; ... a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced.’ ” (quoting 20 Am.Jur.2d Courts § 153 (1995))). Moreover, any such holding would defeat one of the primary purposes of requiring that the necessary elements of an offense be included in an indictment; "to inform the accused of the crime with which he is charged, so that he may prepare a defense if one is available.” Ex parte Washington, 448 So.2d 404, 407 (Ala.1984) (emphasis added).

. In Seymour v. State, 946 So.2d 536 (Ala.2006), this Court overturned well established precedent when it held that the failure to allege an essential element of an offense in an indictment is a not a jurisdictional defect. I was not a member of this Court when Seymour was decided. Had I been, I probably would not have agreed with the Court's analysis or with the reversal of such long-settled principles. However, it is not necessary to discuss every error in Seymour here. Seymour's most glaring defect is that it abrogates an express provision of the Alabama Constitution: “No person shall for any indictable offense be proceeded against criminally by information ...Ala. Const. 1901, Art. I, § 8.

. See Ex parte Hampton, 815 So.2d 569, 571 (Ala.2000) (holding that an indictment that merely tracked the language of the statute defining a crime was fatally defective because the statute, standing alone, did not include the applicable mens rea), cited in Sullens v. State, 878 So.2d 1216, 1234 (Ala.Crim.App.2003) (Shaw, J., concurring in part and dissenting in part); Ex parte Lewis, 811 So.2d 485, 488 (Ala.2001) (" ‘ "An indictment that fails to allege each material element of an offense fails to charge that offense." United States v. London, 550 F.2d 206, 211 (5th Cir.1977). "Failure to charge specific intent is but a particular aspect of the failure to charge an offense.” [United States v.] Purvis, 580 F.2d [853,] 858 [(5th Cir.1978)].'” (quoting with approval Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App.1982))), overruled on other grounds, Ex parte Seymour, 946 So.2d 536 (Ala.2006); Sullens, 878 So.2d at 1234 (Shaw, J., concurring in part and dissenting in part) ("In Alabama, an indictment that tracks the language of the statute is sufficient, but only if the statute prescribes with definitiveness the elements of the offense.” (emphasis added)); see also Vaughn v. State, 880 So.2d 1178, 1193 (Ala.Crim.App.2003) (quoting Travis v. State, 776 So.2d 819, 836 (Ala.Crim.App.1997), aff’d, 776 So.2d 874 (Ala.2000), quoting in turn Breckenridge v. State, 628 So.2d 1012, 1015-16 (Ala.Crim.App.1993)).

. For example, failing to dim one's headlights could blind the driver of an oncoming car and cause that driver to run his or her car off the road and crash, causing a fatality. The killing would undoubtably be "unintentional”; however, under Edwards, it would not constitute the crime of vehicular homicide unless the driver who failed to dim his or her headlights did so knowingly, recklessly, or with criminal negligence. See Edwards, supra; cf., e.g., Burnett v. State, 807 So.2d at 584 n. 3 (Cobb, J., dissenting) (listing examples of unintentional deaths caused by traffic violations so as to come with the vehicular-homicide statute, without a culpable mental state).

.See generally Ex parte Hampton, 815 So.2d 569 (Ala.2000); see also Ex parte Allred, 393 So.2d 1030, 1032 (Ala.1980) ("An indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense." (emphasis added)); Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App. 1982) (" 'Failure to charge specific intent is but a particular aspect of the failure to charge an offense.' ” (quoting United States v. Purvis, 580 F.2d 853, 858 (5th Cir.1978))); cf. Hampton, 815 So.2d at 571 (holding that an indictment was fatally defective because the statute tracked by the indictment, though valid, omitted the element of mens rea and therefore did not "by itself ... adequately list all the elements of the offense for which [the defendant] was charged and convicted").

. See Ala. Const.1901, Art. I, § 8 ("[n]o person shall for any indictable offense be proceeded against criminally by information,” except in circumstances not applicable in this case); Rule 13.1(a) and (b), Ala. R.Crim. P.(defining an "indictment” as "a written statement ... presented to the court by a grand jury, endorsed ‘A True Bill,’ and signed by the foreman,” and defining an “information” as “a written statement charging the defendant or defendants ..., made on oath, signed, and presented to the court by the district attorney ... without action by the grand jury ” (emphasis added)).