MAIN, Judge.
 

 Keebrey Jackson appeals from his conviction for manslaughter, a violation of § 13A-6-3, Ala.Code 1975, and his sentence of 145 months’ imprisonment, which sentence was split so that Jackson was ordered to serve 33 months in prison followed by 5 years on supervised probation. He was ordered to pay restitution and assorted fees and court costs.
 

 The evidence presented showed that, on the morning of September 16, 2008, Jackson, who was 24 years old, and his cousin Anthony Cunningham, who was 28 years old, drove to Cunningham’s grandmother’s house. There, Cunningham’s 17-year-old brother and another cousin, who was 18 years old, began talking with the men. Jackson and Anthony Cunningham left to get liquor and returned, whereupon all four began drinking.
 
 [1]
 
 Jackson and the two younger men testified that all four of them were drunk.
 

 The evidence also indicated that, later that afternoon, the four men decided to go to Jackson’s house, which was located approximately two miles away. Jackson, whose driver’s license was suspended, was driving. A short distance down the road, Jackson failed to stop at a stop sign and then came to a curve in the road. The two younger men, who were seated in the backseats, testified that Jackson seemed to accelerate when he approached the curve. Jackson testified that he believed that he was traveling at approximately 55 to 60 miles per hour as he approached the curve and admitted that he was intoxicated. Jackson attempted to keep the vehicle on the road, but the vehicle ran off the road and hit a tree when rounding a second curve located close to the first one.
 

 Anthony Cunningham was killed in the wreck. The medical examiner testified that Cunningham suffered hemorrhaging around the brain, a broken neck, a torn diaphragm, which caused his stomach to be shoved into his chest, and a torn and dis
 
 *636
 
 placed liver, which lifted his lungs. Additionally, blood vessels to his intestines were torn; his aorta was torn in half; his pelvis was fractured; and he had a compound fracture to the tibia and the fibula. The examiner testified that Cunningham’s blood-alcohol level was approximately 0.27.
 

 Cunningham’s brother suffered injuries to his face, leg, and teeth. The other cousin sustained a head wound, and Jackson injured his head and shoulder, broke his hip, and suffered breathing problems. All three of these men were taken to a nearby hospital and then airlifted to a hospital in Montgomery.
 

 A state trooper was sent to the hospital in Montgomery, but he was unable to interview Jackson, because Jackson was unconscious. However, blood and urine samples were taken twice, indicating that Jackson’s blood alcohol level was 0.243 (based on a urine sample) and 0.219 (based on a blood sample) approximately three- and-one-half hours after the wreck; a second test administered two hours later indicated that he had a blood-alcohol level of 0.182 (based on a blood sample). Jackson’s toxicology reports also indicated the presence of THC (found in marijuana) in his urine and Midazolam in his blood. Jackson was charged with manslaughter for the death of Anthony Cunningham and for second-degree and third degree assault for the injuries to the other passenger in the vehicle. The appeal covers only the conviction for manslaughter.
 

 Following the presentation of the evidence, defense counsel, in his argument to the jury, noted that recklessness was included as an element of both manslaughter and also vehicular homicide as it was one of the three mental states that could qualify as “unintentional” under the vehicular-homicide statute. He then argued that the evidence in this case supported not a conviction for manslaughter, but a conviction for the lesser offense of vehicular homicide, because, he argued, the death was a result of reckless conduct caused by drinking and driving too fast. The prosecutor objected and stated that this argument by defense counsel was a misstatement of the law. The trial court responded that recklessness was not a part of the definition of vehicular homicide. Defense counsel then stated that he was going to request a charge that recklessness could be an element of vehicular homicide.
 

 Following all the arguments to the jury, defense counsel requested a charge based on
 
 Ex parte Edwards,
 
 816 So.2d 98 (Ala.2001), stating that the element of the offense of vehicular homicide that the conduct be “unintentional” would be knowing, reckless or criminally negligent. The prosecutor objected to the timing of the requested charge and further objected that it would confuse the jury. However, the prosecutor then suggested that both the manslaughter and vehicular-homicide charge could charge that the unintentional actions of the defendant in either offense could be reckless. Defense counsel indicated that such a charge would be satisfactory. The trial court stated that such a charge would not track the language of the statute and would be confusing to the jury. The trial court further stated that such a charge would make manslaughter and vehicular-homicide identical offenses. The prosecutor agreed.
 

 The trial court determined that it would charge the jury according to the language of the statute and would trust that the jury knew the meaning of the word “unintentional”. Defense counsel then complained that the jurors may not understand that recklessness could support a lesser charge of vehicular homicide unless they were so charged. The trial court determined that he would charge the jury only on recklessness in conjunction with manslaughter and
 
 *637
 
 the assaults, because it is included in the statutory definitions of those offenses.
 

 The trial court charged the jury as to vehicular homicide but did not provide the jury with any definition of “unlawful” or “unintentional” in its vehicular-homicide charge. The jurors were charged as to recklessness only in the manslaughter, second-degree-assault, and third-degree-assault instructions.
 

 At the close of the charges to the jury, defense counsel again objected to the trial court’s failure to instruct the jury as to the mens rea necessary for vehicular homicide. Defense counsel reiterated that the trial court should have defined “unintentional” by defining “reckless”, “knowing”, and “criminally negligent”. The prosecutor again argued that the requested charge was untimely, coming after the closing arguments. Defense counsel responded that the only part of the charge he had requested after the closing arguments was an addition to his original request. Specifically, he contended that he requested the charge concerning the mens rea necessary for vehicular homicide at that time because the trial court indicated, pursuant to an objection during closing arguments, that it was an incorrect statement of the law. He argued that he did not know that the trial court would not instruct the jury as to the mens rea of “reckless”, “knowing”, and “criminally negligent”. The trial court responded that he had to craft a vehicular-homicide charge from the statute. The trial court decided to adhere to the language of the statute and refused to amend its original charge.
 

 On appeal, Jackson argues that the trial court should have instructed the jury as to recklessness in the vehicular-homicide charge. The State on appeal has conceded that it was error for the trial court not to have done so and that a reversal is required.
 

 The State notes that because Jackson’s request for this charge was not made until after closing arguments, it was untimely and he would not ordinarily be entitled to it.
 

 “Rule 21.1, A.R.Crim.P., clearly anticipates that written requested instructions shall be filed with the trial court and served on the opposing party prior to1 the closing arguments of counsel to the jury.
 

 “1 Rule 21.1, A.R.Crim.P., provides in part:
 

 “‘At the close of the evidence or at such other time during the trial as the court reasonably directs, either party may file and, in such event, shall serve on the opposing party, written requests that the court instruct the jury on the law as set forth in those requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.’ (Emphasis added.)”
 

 Hudson v. State,
 
 628 So.2d 1063, 1064 (Ala.Crim.App.1993). However, the State concedes that, despite the untimeliness of Jackson’s request for a charge defining “unintentional” in conjunction with the offense of vehicular homicide, the trial court had previously agreed to instruct the jury on vehicular homicide as a lesser-included offense and did so. Therefore, Jackson was entitled to a jury instruction that was complete and not misleading.
 

 “‘[Ejvery accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.’
 
 Ex parte Chavers,
 
 361 So.2d 1106, 1107
 
 *638
 
 (Ala.1978). 1 “ Tt is a basic tenet of Alabama law that “a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by proper instruction, ... and the [trial] court’s failure to give those instructions is reversible error.” ””
 
 Ex parte McGriff,
 
 908 So.2d 1024, 1035 (Ala.2004), quoting
 
 Winner Int’l Corp. v. Common Sense, Inc.,
 
 863 So.2d 1088, 1091 (Ala.2003), quoting in turn other cases.”
 

 Williams v. State,
 
 938 So.2d 440, 444-45 (Ala.Crim.App.2005).
 

 Vehicular homicide is defined in Alabama at § 32-5A-192(a), Ala.Code 1975, as follows:
 

 “Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death.”
 

 Here, Jackson was entitled to a complete jury instruction as to the mens rea necessary for a prima facie case of vehicular homicide. Jury instructions as to that mental state have been addressed in
 
 Ex parte Edwards,
 
 816 So.2d 98 (Ala.2001), as follows:
 

 “The jury in Edwards’s case was charged on manslaughter and on criminally negligent homicide as a lesser included offense as to manslaughter, and on vehicular homicide. The jury found Edwards guilty of only vehicular homicide. We conclude that the trial court’s initial reservations about tying the requisite mental state to the word ‘unlawfully’ were sound. We endorse the ‘Use Note on Mens Rea Element’ that accompanies the Alabama pattern jury instruction applicable to § 32-5A-192; that note states that ‘unintentional’ is not defined in the Code but that the committee drafting the instruction assumes that word to refer to all forms of mens rea except that described by the word ‘intentional.’ The Use Note then refers to the previously referenced defined terms governing mens rea elements — ‘intentionally,’ ‘knowingly,’ ‘recklessly,’ and ‘criminal negligence.’ Then, the Use Note correctly concludes:
 

 “ ‘The judge should insert the appropriate mens rea element considering the indictment and the evidence before the court. “There are few, if any, strict liability offenses in this Criminal Code....” Ala. Code § 13A-2-3 Commentary. See also § 13A-2-4(b).’
 

 “Alabama Pattern Jury Instructions; Criminal,
 
 14-4 to 14-6 (3d ed.1994).”
 

 Ex parte Edwards,
 
 816 So.2d at 107 (footnote omitted).
 

 Moreover, the error resulting from the jury’s being foreclosed from finding Jackson guilty of vehicular homicide based on reckless conduct was not harmless. Both the evidence and the jury’s finding of manslaughter after it had been charged on recklessness as to that offense support this conclusion. In
 
 Barrett v. State,
 
 33 So.3d 1287 (Ala.Crim.App.2009), this Court stated:
 

 “Further, the circuit court’s refusal to instruct the jury on vehicular homicide was not harmless because ‘[njothing in the jury’s verdict supports the contention that it could not have returned a verdict on [the offense of vehicular homicide] instead of manslaughter if it had been given the opportunity, or that any finding implicit in the jury’s verdict necessarily precludes a verdict on [vehicular homicide].’
 
 Ex parte Long,
 
 600 So.2d 982, 987, (Ala.1992), overruled on other grounds,
 
 Ex parte Edwards,
 
 816 So.2d 98, 107 (Ala.2001); see also
 
 Craw
 
 
 *639
 

 ford v. State,
 
 886 So.2d 846, 849 (Ala.Crim.App.2003) (holding that the jury’s verdict convicting the defendant of manslaughter did not preclude a verdict on vehicular homicide; therefore, the circuit court’s erroneous refusal to instruct the jury on vehicular homicide was not harmless). Given the opportunity, under the facts and circumstances of this case, the jury could have returned a verdict for homicide by vehicle. Therefore, the circuit court’s judgment is due to be reversed.”
 

 33 So.3d at 1289.
 

 Based on the foregoing authority, and based on the facts and circumstances of this particular case and the evidence presented at trial, the trial court’s judgment is due to be reversed, and this cause is remanded for a new trial.
 

 REVERSED AND REMANDED.
 

 WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.
 

 [1]
 

 . There was some indication in the record, including testimony from Cunningham’s younger brother, that Jackson and Cunningham had been drinking before they arrived at Cunningham's grandmother's home.